Argued July 10, decided July 23, rehearing denied October 8, 1912

## DIAMOND ROLLER MILLS v. MOODY.

(125 Pac. 284.)
(126 Pac. 984.)

**Warehousemen—Delivery by Warehouseman—Wrongful Delivery —Damages.**

1. Where a warehouseman, receiving wheat under an agreement to keep it until called for by a miller who had purchased the same for his mill, made a delivery without demand from the miller and at a time the mill was being repaired, the warehouseman was liable for the damages occasioned by his failure to keep the wheat until called for, but he was not responsible for expenses incurred by the miller in unloading the cars, in the absence of anything to show that the warehouseman was required to unload.

## ON REHEARING.

**Appeal and Error—Determination—Remand of Cause.**

2. Under Article VII, Section 3, of the constitution as amended (see Laws 1911, p. 7), providing that, where a bill of exceptions with the whole testimony is attached, the Supreme Court may enter judgment which should have been rendered below, the cause must be remanded, upon reversal, when the bill of exceptions does not include the entire testimony.

**Appeal and Error—Determination—Erroneous Instructions.**

3. When the jury makes an incorrect finding on correct instructions, the judgment may be altered on appeal; but where the instructions are incorrect and probably misguided the jury in producing an erroneous verdict the cause must be remanded.

**Warehousemen—Wrongful Delivery—Nature of Wrong—"Torts."**

4. A warehouseman, who had received wheat for which he had issued receipts, shipped the wheat to the assignee of the receipts without any demand by the assignee. Section 6038, L. O. L., provides that no person operating any warehouse shall ship, or in any manner remove from his custody, any grain for which a receipt is given, without written consent of the holder of the receipt; and succeeding sections make the receipts negotiable, and violations of the provisions of the act punishable by fine and imprisonment. Held, that the shipment in this case did not fall within the purview of the statute, because there was no conversion by the warehouseman; and the shipment, although possibly a breach of contract, was not a "tort," which is sometimes defined as a breach of duty established by municipal law for which a suit for damages may be maintained.

From Wasco:   WILLIAM L. BRADSHAW, Judge.

Statement by MR. JUSTICE MOORE.

This is an action to recover money. The complaint charges, in effect, that the Diamond Roller Mills is a corporation; that the defendant M. A. Moody, at all the times stated, was operating on the line of the Great Southern Railway at Boyd and at Rice's Station public warehouses; that between September 7, 1908, and October 3d of that year, the plaintiff had on storage in these warehouses a quantity of wheat which it had

purchased from persons who had deposited the grain "subject to be shipped at the order of the owner thereof, but not otherwise"; that between such dates the defendant without any order therefor, in the absence of the return of any warehouse receipt, and against plaintiff's protest wrongfully loaded on cars of such railway wheat and unlawfully shipped it to the plaintiff at The Dalles, Oregon, whereby the grain arrived at a time when plaintiff was unable to unload it, and was compelled to leave it on the cars until the demurrage amounted to $111, which sum plaintiff was obliged to pay the railway company in order to obtain the wheat; "that, in addition thereto, the plaintiff was compelled to employ extra men to unload said cars at the time when the same was received, but which the plaintiff would not have been required to have employed but for said wrongful act of the defendant in shipping the same against the wish and without the order of said plaintiff, as aforesaid," and that plaintiff was also obliged to expend $19.20 for electric power used in unloading and storing the wheat which sum it would not have been compelled to incur but for the wrongful shipment at a time when plaintiff did not have its elevators in use or its mill in operation. Judgment was demanded for the sum of $184.20.

The answer admitted that plaintiff was a corporation; that at the times and places stated in the complaint the defendant operated public warehouses; that plaintiff had on deposit therein wheat purchased from persons who had stored it to be delivered pursuant to their orders; that defendant shipped the wheat to plaintiff, but denied that such shipment was wrongful or unlawful. All other allegations of the complaint were denied. For a further defense and by way of counterclaim it was averred that defendant had the right at any time to terminate the bailment and redeliver the wheat; that, acting upon such authority, he shipped the grain to plaintiff, which

accepted and received it and that the loading and shipping thereof was reasonably worth 50 cents per ton, aggregating $340.73, no part of which had been paid and for which sum judgment was demanded.

The reply put in issue the allegations of new matter in the answer, and, the cause having been tried, a verdict was returned for plaintiff in the sum of $166.20, and, judgment having been rendered thereon, the defendant appeals.                                        Reversed.

For appellant there was a brief over the name of *Mr. William H. Wilson,* with an oral argument by *Mr. John M. Pipes.*

For respondent there was a brief over the names of *Mr. Frederick W. Wilson* and *Messrs. Bennett & Sinnott,* with an oral argument by *Mr. Wilson.*

Mr. Justice Moore delivered the opinion of the court.

1. The bill of exceptions shows that the plaintiff owns flour mills, located at The Dalles, and, in order to keep them in operation, it purchased from various persons quantities of wheat which they had stored in the defendant's warehouses at Boyd and at Rice's Station on the line of the Great Southern Railway. To each of such depositors the defendant issued a warehouse receipt, of which the following is a copy, in blank, to wit:

"No. ———. Original. ——— Station, Oregon ——— 191—.

"Received for storage from ——— sacks of wheat, oats, barley, gross weight ——— lbs., which amount, kind and grade of grain will be delivered to his order on return of this receipt any (and) payment of storage and hauling charges, and repayment of advance with interest. Loss or damage from fire or unavoidable casualties at owner's risk. Grade ———. Condition ———. ———."

Without the return of any of these receipts and against plaintiff's consent the defendant loaded and shipped 13 cars of wheat which arrived at The Dalles September 7, 1908, when plaintiff's mills were being repaired, and in

consequence of the work of restoration the grain could not then be stored in its elevators, but was allowed to remain on the cars until a demurrage of $111 was due the railway company and had to be paid before the wheat would be delivered. Thereafter the defendant loaded and shipped to plaintiff in the same manner 12 other car loads of wheat, but, the mills having been repaired in the meantime, no delay was experienced in unloading the grain. James Snipes, the plaintiff's general manager, was interrogated by its counsel respecting the charge for extra labor, as set forth in the complaint. An objection to the inquiry on the ground that it was not within the pleadings and was incompetent, irrelevant, and immaterial having been overruled and an exception allowed, the witness stated in substance that in order to repair the mills and put them in operation as soon as possible, so as to unload the wheat without further delay, all the regular employes were put at work in making the necessary restoration, and he was compelled to engage three extra men at $2.25 per day to whom was paid $54 for unloading and storing the wheat in plaintiff's elevators and mills.

Assuming without deciding that the defendant had no authority to terminate the bailment at pleasure as is alleged in the answer, and for that reason if he shipped and delivered, to the person lawfully entitled thereto, wheat without his order evidenced by a return of the warehouse receipt, a liability would arise for all damages that would necessarily result from a breach of the agreement to keep the grain until called for, we do not see how the defendant would be responsible for any expense incurred in unloading the cars. The warehouse receipt does not contain any provision to that effect, nor does the complaint state any fact from which such a charge could legitimately result. Keeping all the regular employes at work in making the necessary repairs to the mill, in order to put it in proper condition for operation

as soon as possible, and employing extra men to unload the cars, may have diminished the demurrage which could have been collected. Such decrease of outlay is not a sufficient justification for imposing upon the defendant the expense incurred in discharging the wheat, in the absence of a contract requiring a performance of that service by him. It was incumbent upon plaintiff to minimize as much as possible the damages which it might sustain by reason of the alleged wrongful shipment of the grain. Wheat is a commodity which at the time of year specified herein could have been procured in any amount in the open market in Oregon, and, if the mills were not then in proper condition to receive the grain when it arrived, it would seem that plaintiff could have sold the wheat for the then current price, thereby possibly avoiding all demurrage, and could thereafter have purchased other wheat of the same quality and of equal quantity at a time when the grain could have been received and stored in its elevators, and thereupon charged and recovered from the defendant the damages thus sustained. But, however this may be, it is impossible to see how the defendant was liable for the employment of extra laborers engaged to unload the wheat when that duty devolved upon the plaintiff. The same may be said also with respect to the outlay for electric power used to unload and store the grain.

Believing that an error was committed in admitting the testimony so objected to, the judgment must be reversed, and, as the bill of exceptions does not purport to contain all the evidence given in the lower court, the cause is remanded for a new trial.          REVERSED.

Decided October· 8, 1912.

## On Petition for Rehearing.

(126 Pac. 984.)

Mr. Justice Moore delivered the opinion of the court.

In a petition for a rehearing it is maintained that this action is not founded on a breach of the contract of bailment, but on the tort occasioned by the wrongful shipping of grain that had been stored in a warehouse, and, this being so, the sum of $54, paid by plaintiff for extra laborers employed to store the wheat, was improperly disallowed, as was also the further sum of $19.20, paid for the use of electric power, on account of which latter item no question was made in the lower court; that reducing the damages sustained by plaintiff was not an issue at the trial; and that, though insisting the judgment ought to be affirmed, if a different view were entertained, the sum of $54 should be deducted from the amount awarded by the verdict, and judgment for the remainder directed to be entered in the circuit court, instead of remanding the cause for a new trial.

2. The bill of exceptions does not have attached to it the whole testimony, and, in the absence thereof, the cause must be remanded when a judgment is reversed. Section 3, Article VII, of the Constitution as amended (see Laws 1911, p. 7).

3. The vital question to be considered is whether this action is founded in tort or on contract, or, rather, which form is available, based on the facts involved herein. The theory of plaintiff's counsel respecting this subject is fairly illustrated by parts of the court's charge. When the jury are properly instructed as to the law applicable to a particular state of facts involved in a trial, and based thereon they make an incorrect finding which can be segregated from the remainder of the verdict and corrected on appeal, a judgment in accordance with the alteration should generally be ordered by this court con-

formable to the provisions of the fundamental law herein-before cited. Where, however, the charge given or refused, over exceptions, probably misguided the jury, thereby producing an erroneous verdict, a reversal of the judgment rendered thereon ordinarily necessitates a remand of the cause for a new trial.

4. Exceptions were taken to parts of the instruction, as follows:

(4) "When the said grain was stored in the defendant's warehouse, it became his duty to hold it and keep it safely in storage until he was authorized by the plaintiff to ship or deliver the same."

(5) "He would not have a right to ship said grain to The Dalles, or any other place, without the order, direction, or consent of the plaintiff; and if he did ship it without such order, direction, or consent, and the plaintiff suffered any damage therefor, the defendnat would be responsible for such damage."

(6) "In case of a wrongful shipment as hereinbefore defined, if the plaintiff, by reason thereof, was compelled to pay demurrage upon the said grain, and was compelled to expend money in labor and for electric power, in order to take care of the same over and above what would have been otherwise necessary, these are items for which the plaintiff would be entitled to be compensated."

(8) "Under the laws of this State, no person operating any warehouse or other place of storage shall ship, transfer, or in any manner remove or permit to be shipped, transferred, or removed beyond his custody and control any grain received by him for storage, without the assent of the owner of the grain or holder of the warehouse receipts therefor."

The statute regulating the business provides generally that it shall be the duty of any person operating a warehouse where grain is stored to deliver to the owner thereof a receipt therefor, showing, *inter alia,* the rate of storage charges in dollars and cents, and the terms and conditions of the bailment. Section 6035, L. O. L.

Sig. 4

"No person operating any warehouse * * shall sell, incumber, ship, transfer, or in any manner remove or permit to be shipped, transferred, or removed beyond his custody and control any grain * * for which a receipt has been given by him * * without the written assent of the holder of the receipt." Section 6038, L. O. L.

"All receipts given by any person operating any warehouse for any grain stored are made negotiable by indorsement, which assignment is deemed a valid transfer of the commodity represented by the receipt." Section 6039, L. O. L.

"On presentation of the receipt given by a warehouseman for any grain, and on payment of all charges due thereon, the owner thereof is entitled to the immediate possession of the commodity named in the receipt; and it is the duty of the warehouseman to deliver such commodity to him." Section 6040, L. O. L.

"Any person violating any of the provisions of such act shall be liable to indictment therefor, and, if convicted thereof, shall be fined, or imprisoned in the penitentiary, and may be subjected to both such fine and imprisonment." Section 6041, L. O. L.

By comparing the instructions quoted with the provisions of the statute adverted to, it will be seen that the parts of the charge repeated are patterned after the language of the act mentioned. The legislative sanction given to that enactment was undoubtedly prompted by a custom, revealed in other states and manifested in parts of Oregon, whereby warehousemen with whom grain had been stored, after commingling it with other grain that had been deposited with them, sold the cereals as their own, without the knowledge or consent of the owners. If such bailees were insolvent, which was often the case, a judgment rendered against them for the damages sustained by the bailors afforded no compensation for the loss suffered by the fraud that had been perpetrated. The practice adverted to grew to such proportions during periods of financial depressions, and its

effect was so disastrous to over-confiding bailors that, in order effectually to put a stop to the custom, the statute was adopted to prevent a conversion by warehousemen of property stored with them, and to punish them criminally if found guilty of violating any of the provisions of the enactment.

In the case at bar the plaintiff had secured from bailors an assignment of warehouse receipts, and was the owner of the wheat which, without any request therefor, the defendant shipped by rail to plaintiff's mills at The Dalles, Oregon, its usual place of business. Such delivery was not in any sense a conversion of the grain; for the defendant did no act in reference to the wheat that amounted in law to an appropriation of the property to himself. As the statute referred to was designed to prevent an unauthorized assumption and exercise of ownership over goods and chattels belonging to another, to the alteration of the condition of the property or the exclusion of the owner's right, it is difficult to see how the provisions of the enactment were in any manner involved.

The legal wrong which results from a breach of a contract is not a tort. 1 Street, Foundations, Legal Liability, p. xxviii. See, however, on this subject, 38 Cyc. 428. "A tort," observes a text-writer, "may be said to be a breach of duty established by municipal law for which a suit for damages can be maintained." Bigelow, Torts (8 ed.) § 14. It will be remembered that Section 6038, L. O. L., inhibits a warehouseman from shipping, or in any manner removing beyond his custody and control, any grain for which he has given a receipt. Though the defendant was not an unpaid vendor, and for that reason could not have exercised the right of stoppage *in transitu*, after having placed the wheat on cars, whereby it was removed beyond his custody and control, it is not believed that the clause of the statute last referred to governs a case like this, or is controlling,

except in cases of conversion; and that no element of a tortuous act was involved when the defendant shipped the wheat to plaintiff, for which he had given receipts. These evidences of deposit did not expressly state how long the grain was to have been kept in the warehouses, and the statute is silent on that subject. In any event, however, the defendant was required to hold the wheat a reasonable time. If he failed to observe such implied condition and shipped the grain before the expiration of the time thus limited, thereby terminating the bailment, the plaintiff's remedy was an action for a breach of the contract, and not for a tort; and hence the instructions complained of were erroneous.

The sum of money expended for electric power was thought to have been involved in the giving of instruction No. 6, hereinbefore quoted.

What was said in the former opinion respecting a diminution of the damages sustained by plaintiff was not based on any issue raised by the pleadings or evidence, but was a suggestion founded on the assumption that the action was in form *ex contractu,* and, such being the case, a defense of that kind might properly be interposed.

We adhere to the former opinion.

REVERSED: REHEARING DENIED.