Argued July 31, decided Aug. 13, rehearing denied Oct. 8, 1912.

## HAHN v. MACKAY.

( 126 Pac. 12. )

(126 Pac. 991.)

**Appeal and Error—Review—Record—Setting Forth Errors or Irregularities.**

1. Under Section 171, L. O. L., providing that no particular form of exception is required, but that the objection shall be stated with so much of the evidence or other matter as is necessary to explain it, but no more, a bill of exceptions setting out

the entire charge of the court and the instructions refused, and stating that there was evidence on the questions involved in such instructions, is sufficient to present for review the errors in giving and refusing instructions, although appellant in attaching the evidence to the bill of exceptions, as permitted by Section 3, Article VII, of the Constitution as amended in November, 1910 (Laws 1911, p. 7), neglected to attach exhibits received in evidence.

### Exceptions, Bill of—Setting Forth Errors or Irregularities.

2. Section 3, Article VII, of the Constitution as amended in November, 1910 (Laws 1911, p. 7), providing that either party to the appeal may attach to the bill of exceptions the whole testimony, instructions, and any other matter material to the decision of the appeal, is permissive only, and not mandatory; and, as before, if the parties desire to have reviewed errors of law, they must present them by a properly arranged bill of exceptions, setting out so much of the testimony only as is necessary to disclose the point of the objection, except in some exceptional cases, as where a review of a motion for a nonsuit or directed verdict is desired.

### Damages—Eviction—Duty of Tenant to Minimize Damage.

3. In an action by a tenant against his landlord for entering on the premises and destroying the building used by the tenant, resulting in the loss of his stock of goods and prospective profits, where there was evidence that the landlord offered to furnish another building for the use of the tenant, it was error to charge that the jury should disregard such evidence and not consider whether the tenant should have endeavored to minimize his damges, since it was his duty, not only to preserve his stock of goods by storing them somewhere else, but to reduce his damages from the loss of the use of the premises.

### Trial—Instructions—Ignoring Evidence.

4. In an action by a tenant against his landlord for entering on the leased premises and destroying a building, where there was evidence tending to refute the charge of malice and wantonness, an instruction that if there was any evidence justifying punitive damages the jury should give such damages, was error, amounting in effect to an instruction to disregard defendant's evidence and consider only that of plaintiff.

### Appeal and Error—Briefs—Specification of Errors.

5. Assigned errors, not discussed in appellant's brief, will not be considered.

ON PETITION FOR REHEARING.

**Trial—Eviction of Tenant—Instructions—Damages—Excluding Issues or Evidence.**

6. In an action for evicting a tenant it was error to instruct that the jury could not "consider the minimizing of damages at all," where there was evidence tending to show that plaintiff's damages were less than he claimed; such proof being admissible under the general issue.

**Appeal and Error—Review—Presumptions—Instructions.**

7. Since instructions are presumed to be followed, an erroneous instruction authorizing punitive damages will not be presumed on appeal to have been disregarded and compensatory damages only awarded, because the amount of the verdict, when compared with the damages pleaded, might so indicate.

**Trial—Instructions—Exceptions—Sufficiency.**

8. An omnibus exception to several instructions is properly overruled if some of them are sound.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Jacob Hahn against Donald Mackay. Claiming to be a sub-tenant of premises of which the defendant is the owner in fee, and of which the rental value has greatly increased since the execution of the lease by the defendant to the original tenant, the plaintiff here says by his complaint that,

"Said defendant, desiring to re-possess himself of said property demised by the lease hereinbefore referred to, and desiring to oust this plaintiff and his sub-tenants from the possession of said property did, to wit, on August 20, 1910, maliciously, wickedly, and unlawfully, and without any right or authority therefor, by force enter into and upon the premises above described and demised to this plaintiff, and did tear down, destroy and demolish the entire building upon said premises, and did force and drive this plaintiff and his sub-tenants from said premises and the whole thereof, and did maliciously, unlawfully, forcibly, and without any right or authority therefor, re-possess himself of said premises and the

whole thereof on, to wit, August 20, 1910, and did thereby dispossess this plaintiff and his sub-tenants from the property and the whole thereof, and has unlawfully, forcibly, and wrongfully retained the exclusive possession of said premises since said date, and has excluded this plaintiff and his tenants therefrom."

It appears by the complaint that the rental due from the plaintiff was $250 per month, payable in advance, and that his lease expired February 1, 1911. He says he was engaged in the retail saloon business, and had on hand at the time of his eviction a stock of liquors, etc., valued at $1,100, which was a total loss to him as the result of defendant's wrongful acts. He avers, also, that the reasonable profits of his business was $1,000 per month, and that by reason of being ousted from the premises by the defendant the plaintiff has been damaged in his business in the total sum of $5,333, in addition to which he claims exemplary damages in the sum of $3,000 and demands judgment against the defendant in the sum of $10,000, together with costs and disbursements.

The defendant admits that he is the owner of the fee in the premises described, and that he leased them to the San Francisco Breweries, Limited, a corporation, for a period of five years from February 1, 1906, at a monthly rental of $250 in advance, but otherwise denies the entire complaint. Three affirmative defenses were interposed by the answer. By the first it is charged that, contrary to a covenant in its lease, the San Francisco Breweries, Limited, without any right or authority, and without the knowledge or consent of the defendant, assigned the lease to the Gambrinus Brewing Company, which coming to his knowledge for the first time on June 29, 1910, the defendant as of right re-entered and took possession of the premises as of his former estate; the same being the entry complained of by the plaintiff. The import of the second affirmative defense is that on May 2, 1910,

the building on the premises being in a dangerous and unsafe condition and unfit for occupancy, and the defendant being desirous of constructing a new and safe building thereon, called upon the agent of the San Francisco Breweries, Limited, and obtained his consent to a cancellation of the original lease, and that thereupon, on the date of such consent and cancellation, the defendant re-entered the premises and took possession thereof. The essence of the third separate defense is that the City of Portland, by virtue of its police power, through its building inspector, examined the buildings on the premises, found them dangerous to persons and property, and notified the defendant to tear them down, in pursuance of which warning he entered upon the property and demolished the structures; these being the acts of which the plaintiff complains.

The new matter of the answer is materially traversed by the reply. Further replying, the plaintiff asserts in substance that he himself notified the defendant of having obtained a lease from the San Francisco Breweries, Limited, for the premises, and that even subsequent to June 29, 1910, when the defendant alleges he had first knowledge of the assignment, the defendant, with such knowledge, accepted from the plaintiff the rent reserved for the premises, and hence waived any right to re-enter for an alleged assignment of the lease without his consent. The plaintiff also charges that the action of the city was collusive at the corrupt and dishonest instance of the defendant, to enable him to get possession of the premises and re-let them to another concern after having ousted the plaintiff.

A jury trial resulted in a verdict and judgment against the defendant, from which he appeals.　　　Reversed.

For appellant there was a brief and an oral argument by *Mr. Thos. N. Strong.*

For respondent there was a brief over the names of *Messrs. O'Day & Haddock,* with an oral argument by *Mr. Thos. O'Day.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. As a preliminary matter, it is necessary to dispose of the contention of the plaintiff that, the defendant having failed to have the exhibits in evidence properly identified and made part of the bill of exceptions, those documents are not before the court, and the bill itself should be stricken out. It is provided by Section 171, L. O. L., that "no particular form of exception shall be required. The objection shall be stated with so much of the evidence or other matter as is necessary to explain it but no more." There is before us a paper setting out certain instructions asked for by the defendant and refused, and certain directions to the jury, given by the court, to which exception was taken by the defendant. The entire charge of the court is included therein. In relation to the instructions given, and to which the defendant objected, the paper referred to contains this statement:

"There was, as will more fully appear in the evidence hereto attached and hereby made a part hereof, such evidence as the court referred to specifically in the above instructions, and also other evidence tending to the minimization of such damages."

Similar statements as to the existence of evidence apropos of the questions involved in the requested charge are made in other parts of the paper. Attached to the bill of exceptions is a transcript of 236 pages of stenographer's report of the oral testimony, together with interpellations of counsel, the remarks of the court, and objections to the introduction or exclusion of testimony, and the like. The bill of exceptions proper closes with a certificate of this purport:

"The evidence hereto attached and the exhibits hereby

presented are hereby made a part hereof, and was and is all of the evidence presented on either side in the above-entitled cause and court. Wherefore, due notice of the bill of exceptions having been given, and counsel having been given an opportunity to be heard, and the court being at this time fully advised in regard thereto and finding the same to be correct: Now, therefore, the foregoing statement, and the evidence and exhibits hereto attached and made a part hereof, is hereby settled and allowed as a full, true, and correct bill of exceptions, and is made a part of the record of this cause. Dated June 15, 1911."

Signed by the presiding judge. No exhibits are in fact physically attached to the bill of exceptions, or to the transcript of the testimony. Sundry papers accompany the record to this court; but they are not identified as having been used in the trial in the court below. For the purposes of this case, however, we do not deem these exhibits to be an essential part of the bill of exceptions.

2. It seems to be the contention of counsel for plaintiff that since the amendment of Article VII of the Constitution, adopted in November, 1910 (Laws 1911, p. 7), it is incumbent upon one appealing to necessarily have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. In our judgment that constitutional amendment does not in any manner affect the provisions of the law, already quoted, concerning the structure of a bill of exceptions. As much as ever, it is necessary, if parties wish to present questions of law arising at the trial, they must bring them here in the form of a bill of exceptions, as provided by the statute above quoted. The language of the constitution is not mandatory, but only permissive. It does not by its terms make the whole testimony essential to a bill of exceptions, and, as before the adoption of the amendment, the court will not necessarily wade through a great mass of testimony searching, as for a needle in

a haystack, for errors complained of. If parties desire to present such errors to the court, they must do it, as before, by a properly arranged bill of exceptions, setting out so much of the testimony only as is necessary to disclose the point of the objection. Exceptions to this rule are found in cases where the matter turns upon a motion for nonsuit, when, if that issue of law is to be raised, all the evidence for the plaintiff in chief must be attached to and made a part of the bill of exceptions. Another exception is where the contention arises upon a motion for a directed verdict at the close of all the testimony. To present this properly requires a reproduction of all the testimony in the case. Even then the whole testimony for the plaintiff on the motion for a nonsuit, or the entire testimony of the case on a motion for a directed verdict, will be considered only for those purposes, or for the *quasi* equitable retrial contemplated by the constitutional amendment already mentioned. If errors of law are to be considered in detail, they must be presented as above stated. This is a wholesome rule tending to lessen the expense and to lighten the labors of both court and counsel, condensing the issue, so that it may be brought within reasonable bounds. We hold, therefore, that there is enough in the bill of exceptions presented here to warrant us in considering the errors assigned on the refusal of requested instructions, as well as objections to the charge as given. Without reference to the transcript of testimony attached to the bill, there is enough stated in that document itself to illustrate the point in question in each case. The proper structure of a bill of exceptions is discussed ably by Mr. Justice SLATER, in *Keady* v. *United Railways Co.,* 57 Or. 325 (100 Pac. 658: 108 Pac. 197). The precedents are there collated and reviewed, and the case is of binding authority to this day, notwithstanding the permissive language of the constitutional amendment alluded to, allowing the

testimony and other matters to be appended to the bill of exceptions.

3. The essence of the complaint is that the landlord, before the expiration of the term, entered upon the premises with force, ousted the plaintiff tenant, and razed the building, damaging plaintiff in the loss of his goods, $1,100, loss of profits in business, $5,333—all in a way authorizing the infliction of punitive damages, placed at $3,000. There is evidence in the case about the building inspector of the city insisting on the unsafe condition of the house in question, and that defendant should destroy it. There is also testimony to the effect that, thus urged by that officer, the defendant opened negotiations with the plaintiff, through the agent of the brewery company, looking to a surrender of possession by the plaintiff, and offering to secure another building near that part of the city in which plaintiff could continue his business, but that plaintiff refused to accept the other building or to vacate the premises. As the bill recites in brief, there was such evidence as the court referred to specifically in the instructions, and also other evidence tending to the minimization of such damages. Among others, the court gave the jury these instructions:

"During the progress of the trial, I admitted testimony to show that the loss to the plaintiff might have been minimized by his taking a saloon in another part of the city. Since that time, I have been convinced that I was in error, and I now tell you to put that out of the case, and if you come to that part of the case you will not consider the minimizing of damages at all. It is not properly in the case. I thought it was proper when I admitted that testimony, because if he could have gone elsewhere and minimized his damages it would not have accrued to his damage."

The exception of the defendant having been allowed to this charge, he now complains of it as error. It is a general rule that if a party who suffers by the breach

of a contract can minimize his damages at reasonable expense and care he is bound to do so, and cannot recover for any damage which could have been obviated by the observance of that rule. The plaintiff says that his liquor, beer, and such other goods as are used in the retail liquor business were in the premises leased, and as the result of the malicious and wrongful acts of the defendant herein are a total loss to the plaintiff. How they were damaged by the demolition of the building is not stated. But, conceding that they were set out on the street, the plaintiff would not be authorized to willfully and negligently leave them there to be destroyed, without a reasonable effort to preserve them by storing them in some other building, or by some other reasonably appropriate method. The rule imposing upon the plaintiff the duty of mitigating his own damages, so far as he reasonably can under the circumstances, would certainly apply to the element of damages named in the complaint, whereby, as he alleges, he lost the liquor mentioned, and as we think, to the damage for the loss of the use of the premises as well.

Plaintiff cites many cases where a purchaser under an executory contract for the sale of personal property has refused to take the property when offered at the agreed price, and which hold that, inasmuch as the seller has the right to dispose of as many goods as he can to as many people as he can, and is entitled to the benefit of his contract with the defendant, with the result that he can recover the difference between the contract price and the cost of production, the rule under discussion does not apply. Those precedents could be applied to this case if the defendant had contracted to purchase from the plaintiff so many barrels of beer at such a price, and had declined to receive or to pay for them when tendered. It would be no answer in such a case to say that the plaintiff might have hunted other customers for his beer; but that is not this case. In the most favorable aspect

for the plaintiff, the defendant has deprived him of the benefit of the lease by demolishing the building. If by reasonable efforts and at reasonable expense he could get another building equally as good in which to continue his business, it was his duty to do so and thus minimize, if possible, the damages accruing to him. *Hodges* v. *Fries,* 34 Fla. 63 (15 South. 682); *Dobbins* v. *Duquid,* 65 Ill. 464; *Adair* v. *Bogle,* 20 Iowa 238; *Huntington* v. *Parsons,* 62 W. Va. 26 (57 S. E. 253: 9 L. R. A. [N. S.] 1130: 125 Am. St. Rep. 954); *Moses* v. *Autuono,* 56 Fla. 499 (47 South. 925: 20 L. R. A. [N. S.] 350); *Poutra* v. *Martin* (Tex. Civ. App.), 135 S. W. 725; *Poposkey* v. *Munkwitz,* 68 Wis. 322 (32 N. W. 35: 60 Am. Rep. 858); *Diamond Roller Mills* v. *Moody,* 63 Or. 90 (125 Pac. 284). It was error to withdraw from the jury the consideration of testimony to the effect that the plaintiff might have minimized his loss by taking the building offered to him, instead of the one from which he was evicted.

4. The bill of exceptions states, also, that the court instructed the jury as follows:

"Whether or not there has been in this case shown such a state of facts as will entitle the plaintiff to recover punitive or exemplary damages is a question entirely for your determination. You will look the testimony over with care; and if there is any evidence in this case that justifies you in giving it, why, you give it, and in the giving of it you are only to be governed by wise and sound discretion."

The bill recites that the defendant excepted to this instruction, and the exception was allowed. Exemplary damages are allowed in proper cases to punish the defendant for the element of wantonness or maliciousness in inflicting the injuries of which the plaintiff complains. There are many degrees of difference between one who, without any shadow of right or claim upon the property, should enter upon it and tear down the building to the

eviction of the tenant, and one who, acting in good faith under the supposed compulsion of the city officers, should enter upon the premises and do a like act. Whether the defendant belonged to either of these extremes, or was properly classified under any one of the intermediate degrees mentioned, was a question of fact for the jury. All the circumstances of the case to which allusion has been made were proper for the consideration of the jury in determining the amount of exemplary damages, if any, to be imposed. The quest for punitive damages was one of the issues of fact in the case, and, like all others, should have been decided according to the preponderance of the testimony. The court, however, told the jury that "if there is any evidence in the case that justifies you in giving such damages, why, you give it." This was tantamount to saying to the jurors that they should disregard all the evidence of the defendant calculated to refute the charge of malice and wantonness, justifying punitive damages, and consider only the testimony on behalf of the plaintiff.

5. There were other errors assigned, but not discussed in the brief of the defendant; hence they will not be noticed.

The judgment is reversed.        Reversed.

Decided October 8, 1912.
## On Petition for Rehearing.
(126 Pac. 991.)

Mr. Justice Burnett delivered the opinion of the court.

6. In the former opinion in this case we held that the circuit court erred in giving to the jury the following instructions, to which, the bill of exceptions informs us, the defendant duly excepted:

"During the progress of the trial I admitted testimony to show that the loss to the plaintiff might have been minimized by his taking a saloon in another part of the

city. Since that time I have been convinced that I was in error, and I now tell you to put that out of the case, and, if you come to that part of the case, you will not consider the minimizing of damages at all. It is not properly in the case. I thought it was proper when I admitted that testimony, because, if he could have gone elsewhere and minimized his damage, it would not have accrued to his damage."

In connection with that part of the charge the bill of exceptions recites that "there was, as will more fully appear in the evidence hereto attached and hereby made a part hereof, such evidence as the court referred to specifically in the above instructions, and also other evidence tending to the minimization of such damages." For the first time, it is now argued by plaintiff's petition for a rehearing that the opportunity, if any there was, which he had to procure other quarters for his business whereby he might have lessened his damage, constituted new matter which must be averred by defendant if he would urge it in mitigation of damages. Conceding this contention, and, for the purposes of this case, modifying the former opinion in that respect, and without intimating that the offer of another building would be admissible in evidence unless made at the time of or subsequent to the eviction, yet the instruction referred to erroneously goes too far, in that it directs the jury not to "consider the minimizing of damages at all." That language was tantamount to taking from the jury the whole question of the amount of damages and directing them to find on that point according to the allegations of the complaint. The plaintiff alleged damages in certain amounts and these averments were traversed by the answer. It was possible, under the general issues thus formed, for the defendant to introduce testimony which might lessen the amount named by the plaintiff, and the circuit court has informed us that there was such evidence. Under such circumstances, the instructions in effect told the jury that, if they came to the

conclusion that plaintiff was entitled to any damages at all, they must find according to his estimate, not consider anything offered by the defendant tending to minimize the amount demanded by the plaintiff. It is only new matter in mitigation which must be affirmatively stated. Anything in evidence which tends to disprove even the allegation of amount of damages is yet competent under the general issues, and must be considered by the jury along with the other testimony in the case.

7. In the opinion already mentioned, we also held that the following instruction to the jury was erroneous:

"Whether or not there has been in this case shown such a state of facts as will entitle the plaintiff to recover punitive or exemplary damages is a question entirely for your determination. You will look the testimony over carefully, and, if there is any evidence in this case that justifies you in giving it, why, you give it, and in the giving of it you are only to be governed by a wise and sound discretion."

The petition for rehearing argues thus:

"When a verdict is made up of two elements, one compensatory and the other exemplary damages, and the amount of the verdict given can be accounted for as compensatory damages, if the ruling of the court as to compensatory damages is correct, and as to exemplary damages incorrect, the court will presume that the jury followed the court's correct instructions and found only compensatory damages."

With the argument thus quoted as a major premise the petition lays down a minor premise, in substance, that taking from the total of $10,000, demanded in the complaint, the $3,000, asserted to be punitive damages, there would be left $7,000, whereas there was a general verdict for plaintiff for only $6,316. This last amount, it is argued, is made up as follows:

| | |
|---|---|
| Loss of profits | $5,333.00 |
| Loss of rent from sub-tenants | 533.00 |
| Damage to stock of goods | 450.00 |
| Total | $6,316.00 |

These items do not appear in the verdict, but are found only in the speculation of the petition. In the absence of a special verdict stating such items, we have no means of knowing what amount the jurymen allowed for compensatory damages or for punitive damages. Neither can we presume that they disregarded any instructions of the court, either erroneous or proper. The purpose of instructions to a jury is to influence and direct the members of that body in their deliberations, and the presumption is that such purpose was accomplished and the instruction took effect according to its terms. Hence it is that giving an erroneous instruction operating materially against a party appealing constitutes reversible error.

3. The petition criticises the form of exception to the portion of the charge about which complaint was made. It is true, as laid down in *Murray* v. *Murray,* 6 Or. 17, and *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. 309), that an omnibus exception to a series of instructions, some of which are correct, will avail an appellant nothing, although others of the series are unsound. But here a separate exception was made to each specific instruction so that there is no doubt that the trial court was clearly informed about the defendant's complaint concerning the charge.

With the modification above noted, the former opinion will stand, and the petition for a rehearing is denied.

REVERSED: REHEARING DENIED.