Argued at Pendleton May 7, reversed July 14, rehearing denied August 30, 1927.

# THE FARMERS' BANK OF WESTON *v.* W. H. ELLIS ET AL.

### (258 Pac. 186.)

**Warehousemen—Statutes, Prohibiting Delivery by Warehousemen Without Written Consent of Holder of Receipt, Applies to "Duly Authorized Agent" of Holder (Or. L., §§ 7997, 8016–8018, 8043).**

1. Provision of Section 7997, Or. L., prohibiting delivery of grain or other produce stored in warehouse to any person without written consent of holder of negotiable warehouse receipt issued for such produce, applies to a person claiming such property as agent of holder of receipt; "duly authorized agent" within Section 8016, being person having the written authority referred to in Section 7997, in view of Sections 8017, 8018, 8043.

**Warehousemen—Warehousemen at Their Peril Delivered Potatoes to Person Who Stored Them Without Requiring Written Consent of Holder of Receipts—"Duly Authorized Agent" (Or. L., §§ 7997, 8016–8018, 8043).**

2. Where negotiable warehouse receipts, given for potatoes stored in defendant's warehouse, were pledged with bank to secure loans, warehousemen, in delivering potatoes to pledgor on his verbal statement that he was acting as agent for pledgee bank, and without requiring written evidence of his authority from bank, acted at their peril, under Sections 7997, 8016–8018, 8043, Or. L., pledgor not being "authorized agent," within Section 7997.

Warehousemen, 40 Cyc., p. 445, n. 88, p. 447, n. 96.

From Baker: C. H. McCOLLOCH, Judge.

In Banc.

This is an action by the plaintiff, an incorporated bank, against defendants W. H. Ellis and Harry C. Ellis, as partners, doing a general warehouse business in Baker, Oregon, to recover damages for failure to deliver to plaintiff certain potatoes deposited by plaintiff's assignor in the warehouse of defendants, and

---

2. Rights of purchaser of warehouse receipt as against warehouseman delivering goods without production of receipt, see note in 38 A. L. R. 1210. See, also, 27 R. C. L. 986.

represented by receipts, being exhibits "B" and "C" in the trial of this case.

There are two causes of action,—one setting up the misapplication of the potatoes represented by exhibit "B," and the other of the potatoes represented by exhibit "C." Taking the complaint as a whole, and for the sake of brevity, we will consider the two causes of action together.

In the first cause, it is alleged that on the twenty-eighth day of October, 1925, John H. Grafton deposited with the defendants for hire in their warehouse 545 sacks of netted gem potatoes which weighed 56,728 pounds, and that they delivered to Grafton their warehouse receipt therefor which was in the form known by the laws of this state as a negotiable receipt.

In the second cause, it is alleged that Grafton delivered 41,829 pounds of potatoes to the same defendants for which the defendants issued a warehouse receipt. In December, 1925, Grafton indorsed and delivered said receipts to the plaintiff and the plaintiff has been and is now the holder thereof for value and in good faith.

It is also alleged that about the 11th of June, 1926, the plaintiff presented said receipts, with the indorsements thereon, to the defendants, and offered to satisfy the lien which defendants might have on the potatoes and to surrender the receipts, and demanded the defendants to deliver the potatoes to plaintiff. That thereupon the defendants stated to plaintiff that they had disposed of the said potatoes and no longer had them, or any part of them, in their possession, and that they were unable to deliver and did not deliver the said potatoes or any part thereof to plaintiff. In consequence of such refusal, the plaintiff

claimed to have been damaged in the sum of $1,362.50, on one cause of action and the sum of $1,000 on the other cause of action.

The defendants answered, practically admitting the fact of the deposit by Grafton and the issuing of the receipts, and, by way of defense, alleged that Grafton entered into an agreement with the plaintiff whereby it was understood and agreed by and between said plaintiff and Grafton that, in consideration of the delivery by Grafton to plaintiff of the warehouse receipts covering the potatoes stored in various warehouses, plaintiff would loan money to Grafton, and said warehouse receipts so delivered to plaintiff would be retained by said plaintiff as collateral security for said loan; and it was then and there further understood and agreed by and between plaintiff and Grafton that, in view of the fact that the potatoes covered by said warehouse receipts were perishable property, and that both Grafton and plaintiff were interested in protecting the same and securing the best price obtainable therefor, the sale of said potatoes should be negotiated and made by the said Grafton for and in behalf of plaintiff, and as its agent, with the understanding and agreement then and there had and made between the parties that he the said Grafton would deposit with plaintiff the proceeds from the sales of all potatoes covered by the warehouse receipts to be delivered to said bank, or account to plaintiff for said proceeds, and that said warehouse receipts would be returned by plaintiff to said Grafton upon demand at such times as sales of the potatoes covered thereby were being made; that when demand for return of said receipts was made by the said Grafton on plaintiff, plaintiff would release all claim in and to the potatoes covered by the receipts demanded, and would

return said receipts to the said Grafton; that at said time a large number of warehouse receipts, including the warehouse receipts referred to in paragraph IV of plaintiff's first cause of action herein, and in paragraph I of plaintiff's second cause of action herein, were delivered to and pledged to said bank by Grafton; that said receipts were pledged by the said Grafton under said contract and not otherwise; and that said agreement so made between plaintiff and said Grafton was all in accordance with a general banking custom in such cases then well known to plaintiff, and under which custom, when warehouse receipts covering perishable property were pledged to a bank as security for a loan, the pledgor thereof would be permitted to dispose of said property as the agent of the bank, the proceeds of the sale to be accounted for and paid over to said bank.

Defendants allege that under and pursuant to said custom and agreement, plaintiff loaned to said Grafton sums of money, the aggregate amount of said loans being to defendants unknown, and on or about the eighth day of February, 1926, and pursuant to said custom and agreement as set forth in the preceding paragraph hereof, said Grafton requested plaintiff to surrender certain warehouse receipts, including those two certain warehouse receipts hereinabove referred to. Plaintiff thereupon undertook to return and deliver to said Grafton said receipts, and pursuant to said agreement delivered unto said Grafton a number of warehouse receipts; that by inadvertence said warehouse receipts, being exhibits "B" and "C," were not returned to said Grafton, but by Grafton's request for said receipts and plaintiff's agreement to return the same, all claims of plaintiff in and to said potatoes referred to in said receipts

were released pursuant to said agreement, and said Grafton, pursuant to said agreement and with the understanding that said receipts had been returned and not otherwise, sold and delivered said potatoes covered by said warehouse receipts, and that under the terms of said agreement, plaintiff at the time of said sale had no right, title, claim or interest in or to said potatoes covered by said warehouse receipts, or any part thereof. That thereafter said Grafton tendered unto the plaintiff the sum of $1,357.01, the proceeds derived from the sale of said potatoes, and that plaintiff failed and refused to accept the same. That said agreement, hereinabove referred to, was communicated to these defendants by the said Grafton and that said potatoes were released from the warehouse belonging to these defendants pursuant to said agreement and not otherwise.

The allegations of new matter being controverted by a reply, the case went to trial upon the issues thus formed; and under the instructions hereinafter referred to, the jury returned a verdict in favor of the defendants, from which plaintiff appeals.

REVERSED. REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Fee & Fee* and *Mr. William Smith,* with an oral argument by *Mr. J. Alger Fee.*

For respondent there was a brief over the name of *Messrs. Nichols, Hallock & Donald,* with an oral argument by *Mr. James T. Donald.*

McBRIDE, J.—The sections of the Code bearing upon this subject may be summarized as follows:

Section 8017, Or. L., in substance, provides:

"Where a warehouseman delivers the goods to one who is not in fact lawfully entitled to the possession of them the warehouseman shall be liable as for conversion to all having a right of property or possession in the goods if he delivered the goods otherwise than as authorized by subdivisions (b) and (c) of the preceding section, and though he delivered the goods as authorized by said subdivisions he shall be so liable, if prior to such delivery he had either:

" (a)  Been requested, by or on behalf of the person lawfully entitled to a right of property or possession in the goods, not to make such delivery; or

" (b)  Had information that the delivery about to be made was to one not lawfully entitled to the possession of the goods."

Section 8018, Or. L., provides:

"Except as provided in section 8043, where a warehouseman delivers goods for which he had issued a negotiable receipt, the negotiation of which would transfer the right to the possession of the goods, and fails to take up and cancel the receipt, he shall be liable to anyone who purchases for value in good faith such receipt, for failure to deliver the goods to him, whether such purchaser acquired title to the receipt before or after the delivery of the goods by the warehouseman."

Section 8043, Or. L., among other things, provides: Liability of a warehouseman ceases after he makes lawful sale in satisfaction of his lien, or because of the perishable or hazardous nature of the goods.

Section 7997, Or. L., among other things, provides:

"No person operating any warehouse * * or other place of storage, shall sell, * * ship * * or in any manner remove or permit to be shipped * * beyond his custody or control, any grain * * or other produce or commodity for which a receipt has been given by him, as aforesaid, whether received for storing * *

or other purposes, without the written assent of the holder of the receipt.''

Section 8016, Or. L., in substance, provides: Where a warehouseman delivers goods to the authorized agent who holds the warehouse receipts for the same, said delivery is justified and the holder of said receipts has no cause of action against the warehouseman.

The following facts may be taken as thoroughly established: First, that the warehouse receipts, ''B'' and ''C,'' are negotiable; second, that the plaintiff was the holder thereof when the goods were shipped; third, no one had the written assent of the plaintiff that the goods might be shipped to him; fourth, that the defendants did not take up or cancel said receipts; and fifth, the receipts provided in terms that, in order to justify defendants in shipping the goods, said receipts must be surrendered properly indorsed.

The form of warehouse receipt issued by defendants to Grafton is as follows:

''Ellis Transfer.
W. H. Ellis, Proprietor.
1927 Court St.                               Phone 456.
Baker, Ore., Oct. 28, 1925.

Received from Jack Grafton subject to his order hereon, on payment of all charges and the surrender of this receipt properly endorsed.

| Lot | Warehouse | Section | Articles |
| --- | --- | --- | --- |
| Lot 2 | Main | 2 | 545 Sks. Netted Jems (Gems) |

It is agreed that all loss or damage to property occasioned by fire, water, leakage, vermin, ratage, breakage, frost, accidental or providential causes, riot or insurrection or to perisable property is at owner's risk, and any class of goods not properly packed at owner's risk. Not responsible for shrinkage in weights.

Warehouse Receipts Must Accompany Delivery Orders.

Storage per contract .............
Net weight handed in 56,728 lbs.

ELLIS TRANSFER.
By E. D. P."

1. This whole case may be condensed in practically one proposition: Was Grafton the duly authorized agent of the plaintiff.bank to the extent of authorizing him to cause the goods to be shipped without presentation of the receipt to the warehouseman? It is an important.question largely depending for its solution upon the construction of the law as indicating the intent of the lawmaker in enacting it. We take it that the object of the law, as shown by its many provisions, was to see that each step taken, beginning with the deposit in the warehouse and the issuing of the receipt to the final delivery of the goods by the warehouseman to the holder of the receipt should be evidenced by some statement in writing so as to completely preclude any attempt by an unauthorized person to get possession of the property. The defendants in this cause contend for the somewhat singular theory, so far as business is concerned, that the owner of the warehouse receipt can pledge it as security for a loan, and sale by him be authorized by oral agreement, and at the same time enable him to dispose of the property and cause it to be delivered to a purchaser without having in his possession the warehouse receipt, or without being authorized by his pledge in writing so as to authorize the *corpus* of the property, indicated by the receipt, to be disposed of at his pleasure upon his mere promise to pay the debt out of the proceeds of the property so disposed of. It would be a unique and unusual method of doing

business, to say the least, and we are of the opinion that the requirement, that the person demanding possession of the property or so disposing of it should have some written evidence of his authority as indicated in Section 7997, Or. L., should apply to any person presuming to exercise dominion over the property, and should be the sole evidence of his authority to demand a transfer of the possession of the property. Any other construction would leave a loophole in the law which would render it practically nugatory in many instances. As a matter of public policy, this construction should be given to the statute and no person, so far as this warehouse statute is concerned, should be construed to be an agent unless he either has possession of the receipts and offers to return them or cancel them upon delivery of the property, or has written authority from the person holding the receipts. A "duly authorized agent" is a person having the written authority referred to by Section 7997, Or. L.

2. In this case there is no evidence to show that the defendants had any knowledge of the alleged contract between Grafton and the plaintiff, or that they assumed to deliver the property to Grafton, or upon Grafton's order by reason of any knowledge of the alleged oral agreement which accompanied the pledge of the receipts in the first instance. In fact, the evidence is conclusive that they had no such knowledge nor even knowledge that the receipts had been assigned, but merely took Grafton's word as a sufficient voucher and as a justification for their act in delivering the goods to the purchaser, no doubt supposing him to be the owner of the property and without requiring a delivery of the warehouse receipts. In doing this they acted at their peril and the courts are not re-

quired, in this instance, to go into an investigation as to the private agreements between Grafton and the plaintiff. Defendants delivered the potatoes, which were for the purposes of this case the property of the plaintiff, upon the verbal order of the person who had pledged them to the bank and without requiring the receipt or any evidence of his authority from the plaintiff to dispose of the potatoes and in doing so they did so at their peril. Grafton was not such an agent in this matter to be within the terms of an "authorized agent" as used in the statute now being considered.

The defendants rely largely upon the case of *Diamond Roller Mills* v. *Moody*, 63 Or. 90 (125 Pac. 284, 126 Pac. 984). The facts in that case clearly distinguish it from the case at bar. In that case, the plaintiff had on deposit in defendant's warehouse a quantity of wheat which defendant, without order of the owner, shipped to it. The owner brought an action for damages being the cost of unloading the wheat at its mill. The court held that a shipment of the wheat to the owner of it, while it might have constituted a breach by defendant of his contract of bailment, did not constitute a tort and, substantially, that as the owner had received the wheat and still had possession of the receipt, it did not bring itself within the purview of Section 7997, Or. L., which was designed to protect the owner or holder of the receipts from delivery of the same to unauthorized persons. Here, the delivery was made upon the order of a person not legally authorized (i. e., in writing) to a party outside the state leaving plaintiff a doubtful and difficult remedy against Grafton or Balcom & Company for the price of the commodity. The situation here at once suggests the danger attendant upon a deviation from the strict though salutary

rule prescribed in Section 7997 of the Code. To require the plaintiff to litigate with Grafton or Balcom & Company as to the charges, or to accept the check of a foreign firm in lieu of the commodity which was stored in defendants' warehouse, would be a perversion of the law and especially when none of these persons or firms are parties to the case.

The judgment is reversed and a new trial directed.

REVERSED WITH DIRECTIONS. REHEARING DENIED.

BELT, J., took no part in the consideration of this case.

RAND, J., Dissenting.—This is an action to recover for defendant's failure to make delivery to plaintiff upon demand of certain potatoes described in two negotiable warehouse receipts issued by defendants as warehousemen to J. H. Grafton and by him indorsed to plaintiff as collateral security for loans made by plaintiff to Grafton. The plaintiff is a banking corporation and the defendants are warehousemen. The two receipts in question were issued respectively on October 28 and November 8, 1925, and the potatoes described therein were shipped by defendants during the latter part of May, 1926, on the telegraphic order of Grafton without the surrender of the receipts, and were sold by Grafton and the proceeds realized therefrom were tendered by Grafton to the bank, which tender was not accepted. At the time of the delivery, plaintiff held said indorsed receipts as a pledge and continued in the possession thereof until the trial, claiming them as security for moneys due from Grafton. This action was commenced on June 11, 1926, to recover the market value of the potatoes at the time of their alleged conversion.

In substance the answer sets up as a defense to the action that prior to the delivery of the potatoes to Grafton, plaintiff had entered into an oral agreement with Grafton whereby it was understood and agreed between them that Grafton should act as the agent of the bank in the sale and disposal of these and other potatoes described in other warehouse receipts held by the bank as collateral for loans made to Grafton, and should pay over to the bank all of the proceeds realized from the sales thereof to be applied on his indebtedness to the bank, and that the delivery made to Grafton of the potatoes in question was made pursuant to said agreement and to the duly authorized agent of the bank, and that by reason thereof defendants were discharged from their liability to plaintiff as warehousemen. These allegations were denied by the reply and the issue thus raised is settled by the verdict if the evidence offered was competent and sufficient to support the verdict.

The evidence shows that for several years Grafton had been engaged in the business of buying and selling potatoes on a large scale and in several states. That to finance his business he had entered into an agreement with the plaintiff bank whereby it was agreed that the bank would furnish him with money and that he would buy potatoes, store them in warehouses, indorse and deliver the warehouse receipts to plaintiff and that plaintiff should hold said receipts as collateral for its loans. To this extent there is no conflict in the testimony either as to making of the agreement or the carrying out of the same.

It is alleged in the answer and denied by the reply that the bank gave authority to Grafton to sell and dispose of the potatoes described in the various warehouse receipts while such receipts were being held as

collateral by the bank. The only condition being that all proceeds realized from the sale thereof should be paid over to the bank. That Grafton did have authority to sell the stored potatoes is not denied by the testimony of any witness, but it is the contention of plaintiff that this authority was not to be exercised until after the bank had returned the warehouse receipts to him. Upon this point on direct examination Mr. Kellogg, the cashier of plaintiff, testified:

"Q. Now you may state whether or not Mr. Grafton was permitted to enter into the matter of selling these potatoes that had been stored. A. He had the right.

"Q. He had what right? A. To negotiate the sale.

"Q. Had the bank ever given him permission in any way to get possession of the potatoes without the receipts? A. It did not."

But in other parts of his testimony this witness testified to the effect that whenever Grafton called for any warehouse receipts, they were immediately forwarded to him without the payment of any money to the bank or the giving of any other security, and that when the receipts were thus returned to Grafton, witness charged against Grafton's account the amount which he thought should be realized from the sale of the potatoes described in the returned certificates, and that after the sale and when the money came in from the sale of the potatoes, Grafton's account was then credited with the actual amount received by the bank. This shows the construction which the bank placed upon its contract with Grafton and the course of dealings between them. Its importance lies in the fact that the bank construed its own contract to mean that whenever Grafton should call upon the bank for the return of any of the warehouse receipts, they were to be returned without any payment being made

until after Grafton had withdrawn the potatoes from the warehouse and had sold and disposed of them.

Concerning the contract, Grafton as a witness for defendants testified and his testimony was not contradicted:

"I was to sell the potatoes when in my judgment the time was right and the warehouse receipts were to be surrendered, provided always that I account to the bank for the proceeds that I got from the potatoes."

Concerning the warehouse receipts in question he testified:

"I called Mr. Kellogg on the phone and told him I wished to ship some of the potatoes I had in storage in Baker, and to send the Baker receipts to me and he said all right that he would."

Where warehouse receipts are issued providing that the property described therein shall be delivered only on return of the certificates properly indorsed thereon, a warehouseman who delivers the property without the return of the receipts is liable to an indorsee of the receipts who has in good faith loaned money upon them: Jones on Pledges and Collateral Securities (2 ed.), § 311a. The receipts in question were of that description, but the facts in the instant case are not such as to bring the case within that rule. Under the uncontradicted testimony of Grafton, he telephoned plaintiff to forward the particular receipts in question and the bank promised to comply with his request. He then wired defendants directing them to make the shipment; they did so and the potatoes were sold and the check taken in payment therefor was made payable to the joint order of plaintiff and Grafton and was tendered by Grafton to the bank. There is no suggestion that there was any

fraud in the transaction, or that the potatoes were not sold for their full market value, or that the proceeds were not made payable to plaintiff or the check not tendered to plaintiff. Having thus consented to Grafton's sale and disposal of the potatoes, which the bank knew could not be consummated unless defendants delivered them to Grafton, the rule of *Volenti non fit injuria* applies, and the fact that defendant failed to keep its promise to return the warehouse receipts to Grafton is not sufficient to prevent its application to the facts proved. Having consented to the sale of the potatoes by Grafton the bank impliedly authorized Grafton to do every act necessary to be done in order to consummate the sale, and hence plaintiff sustained no injury by defendant's delivery of the potatoes without the surrender of the warehouse receipts.

There is another ground upon which the evidence is sufficient to sustain the verdict. Where choses in action such as these warehouse receipts are transferred as collateral security for a loan, the delivery of the security is a pledge of the property to secure the payment of the debt and "vests in the transferee all the rights of the transferrer in so far at least as it may be necessary to accomplish the purpose of the transfer. And since the holder, to the extent of his interest therein, is substantially the owner, he must assume the duties of such owner, and must protect the interest of the transferrer as well as his own, for the latter has by surrendering the security, lost his right to deal therewith." Bowers on Conversion, § 43.

Since a transfer of a warehouse receipt as collateral for a loan does not make the pledgee the absolute owner of the pledged receipt, and both the pledgor and pledgee retain an interest in it, and since the duty

in such case is cast upon the pledgee to protect the
interests of both himself and the pledgor, there is no
reason why they may not enter into a contract be-
tween themselves as to the manner in which the rights
and interests of both may be subserved.   In the in-
stant case the potatoes described in the two ware-
house receipts in question were from their very nature
perishable.   The business of speculating in potatoes
is a special business requiring for its success, special
knowledge of market conditions.   Such knowledge
ordinarily is not possessed by bank officers, and
unless the bank wished to assume the risk of finding
a purchaser, it had to entrust that duty to some one
else.   The dealings between the bank and Grafton
covered a large number of warehouse receipts, and
the potatoes described in these receipts were de-
posited in a large number of warehouses.   There is
no pretense that either Grafton or the bank contem-
plated that these potatoes should be sold while stored
in warehouses.   The success of the business depended
upon their being consigned to wherever a market could
be found and be there sold and disposed of.   There is
no pretense that the bank had any agent except
Grafton to look after the sale and disposal of the
potatoes, and there was no reason why if the bank
chose, Grafton should not have been entrusted with
that duty.   Presumably from the fact that the bank
furnished money for the conduct of his business, the
bank had confidence in his ability and honesty, and
having such confidence, made him its agent for that
purpose.

Again quoting from Bowers on Conversion, Section
69:

" * * And it may be stated as a premise that a
pledgee is a bailee holding personal property intrusted

to his possession as security for the payment of a debt due him or for the performance of some other contract or condition by the owner of the property, upon which payment or performance it becomes the duty of the pledgee to return to its owner the specific property so intrusted to his possession. It will thus be seen that possession is the prime essential of a contract of pledge, and without it the creditor has no rights he can maintain as a pledgee against the property of his debtor. If the pledge once takes effect by delivery of possession to the pledgee, the lien will be lost if possession be re-delivered to the pledgor by the pledgee, or by another with his consent, unless such re-delivery be for a temporary use or with the understanding that the pledgor shall have possession as agent of the pledgee."

The rights of the plaintiff and of Grafton are to be determined by the agreement entered into at the time of making the pledge. If, as the evidence tends to show and as the jury found, the understanding was that these warehouse receipts were to be redelivered to him whenever it became necessary for him to sell the stored potatoes and were redelivered for that purpose only, his temporary possession would not destroy the validity of the pledge, for in that case he would hold the receipts as the mere agent of the pledgee and for the purpose only of carrying out his contract. In such case a delivery to him would be a delivery to the bank itself, since in demanding and accepting delivery he would be acting under the authority of and as the bank's agent. Until changed by the Uniform Warehouse Receipts Act the liability of a warehouseman ended with his delivery of the property to the person rightfully entitled to it. But now, by Section 8018, Or. L., "where a warehouseman delivers goods for which he had issued a negotiable receipt, the negotiation of which would transfer the

right to the possession of the goods, and fails to take up and cancel the receipt, he shall be liable to anyone who purchases for value in good faith such receipt, for failure to deliver the goods to him, whether such purchaser acquired title to the receipt before or after the delivery of the goods by the warehouseman.'' This statutory provision has no application here because at the time of the delivery to Grafton, the bank was the party rightfully entitled to the goods, and had not transferred the receipts to anyone either before or since the delivery. The case, therefore, stands upon a different footing than it otherwise would if the bank either before or after delivery to Grafton had transferred these receipts to a purchaser for value in good faith, and such purchaser was suing to recover for the defendant's failure to deliver the goods to him.

Unless made so by the statute there can be nothing unlawful or immoral in a contract of the character claimed. Section 7997, Or. L., makes it unlawful for any warehouseman to permit any goods for which he has given a receipt, to be removed from the warehouse without the written assent of the holder of the receipt. This section is a part of an act passed by the legislature in 1885. Since its enactment and in 1913, the Uniform Warehouse Receipts Act has been enacted and is now in force in this state. This latter act attempts to define the rights, duties and liabilities of warehousemen in all cases. So far as there is an irreconcilable conflict between any of the provisions of the two acts, the provisions of the latter act control. There is a clear repugnancy between the particular provisions of the statute just referred to and Section 3016, Or. L., which is a part of the Uniform

Warehouse Receipts Act. This latter section in part reads as follows:

"A warehouseman is justified in delivering the goods, subject to the provisions of the three following sections, to one who is: (a) The person lawfully entitled to the possession of the goods, or his agent."

This clearly justified defendants in delivering the goods to the agent of the bank, although it was done without the delivery of the negotiable receipts unless the case comes within some other provision of Section 8016 and the three following sections. There is nothing in these four sections, except the part just quoted which has any application to a case where the facts are similar to those involved here, and since under these four sections read and construed together, the defendants were justified in delivering the goods to the agent of the person lawfully entitled to the possession of them, and since the negotiable warehouse receipts have not been transferred by the bank to anyone, it follows that plaintiff is not entitled to recover in this action and that the judgment in defendant's favor ought to be affirmed.

BROWN, J., concurs in this dissenting opinion.