Argued Oct. 9, decided Oct. 22, rehearing denied Nov. 12, 1912.

## LEWIS v. NORTHWESTERN WAREHOUSE COMPANY.

(127 Pac. 33.)

**Wharves—Contracts for Lease—Rental—Holding Over.**

1. An owner of a dock proposed, by letter, to lease it to a lessee for a flat rate of a specified sum per ton for passing over the dock, and a specified rate per ton for scouring and grading. The lessee, by letter, added to the terms that he would pay half the expense of employing a watchman, and that he should have an option for the renewal of the lease for another year. The owner, by letter, accepted the conditions, but added the qualification that it was understood in the renewal of the agreement that the usual amount of business would be done. Prior to the correspondence, oral negotiations showed that it was understood that the lessee should have the dock, provided he did the usual amount of business. Held, that the rental was computed on the amount of the business with a minimum limit according to the average business done, and the lessee, holding over, was bound by such contract.

**Appeal and Error—Disposition of Case.**

2. Under Section 3, Article VII, of the Constitution, as amended, authorizing the Supreme Court to direct the entry of the proper judgment, the findings, based on evidence erroneously admitted or based on an erroneous view of the law, will be disregarded, and where, on the whole record, the Supreme Court can determine what judgment should have been rendered, it will direct the trial court to enter such judgment.

From Multnomah:   Robert G. Morrow, Judge.

Statement by Mr. Chief Justice Eakin.

This is an action by Clementine F. Lewis against the Northwestern Warehouse Company, a corporation, to recover rental for wharfage.

Defendant occupied the dock from September, 1906, until June 30, 1908, under an agreement evidenced principally by letters; defendant having entered into possession of the dock before the terms of the occupation were agreed upon, and the correspondence having been preceded by some preliminary conversation.

The following correspondence was had between plaintiff's agent, L. A. Lewis, and the defendant's agent, C. E. Curry:

"October 5, 1906.

"Mr. C. E. Curry, Mgr. Northwestern Warehouse Co., City.

"Dear Sir:   In thinking over the adjustment for Columbia Dock No. 2 for the balance of the season it seems to me that, inasmuch as you have begun your season's work on a tonnage basis, it would be proper enough to carry it out on similar lines. * * It would seem to me that a flat rate of 15 cents per ton for passing over the dock and a rate of 4 cents per ton for scouring and grading would be, under present conditions, a fair charge to make. * * The above offer, of course, would mean. your taking care of all items in connection with the dock, such as watchman, etc., and as far as the machinery goes, it would insure a delivery of it in good condition, ordinary wear and tear being taken into consideration. * *          Yours truly,

"L. A. Lewis."

To which Mr. Curry replied:

"Portland, October 9, 1906.

"Mr. L. A. Lewis, Agent, Columbia Dock No. 2, City.

"Dear Sir:   Referring to your proposition of the 5th inst., in re our taking over Columbia Dock No. 2, please be advised that we accept your proposition as stated, with the exception of the night watchman expense, which we understand to be $50.00 per month, and which expense

we have since agreed upon to be borne equally by you and ourselves. With the further understanding that we have the option, declarable on or before April 1st, next, of leasing the said dock for one more year on the same terms and conditions; this providing, however, that the property is not sold. · We agree to render you monthly statements showing quantity delivered over the dock, also deliveries made over the machine, a charge of 15 cents per ton to be made on the quantity actually delivered over the dock, and a charge of 4 cents per ton to be made on the quantity actually passed over the machine. Please confirm.        Yours very truly,

"Northwestern Warehouse Co.,<br>"C. E. Curry."

To which Lewis replied:

"October 10, 1906.

"Northwestern Warehouse Co., City.

"Gentlemen: I beg to acknowledge receipt of your favor of the 9th inst., note your acceptance of the proposition outlined in my letter of the 5th inst., with the exception that Columbia Dock will stand one-half of the monthly expense of the night watchman, with the further understanding that you have the option of leasing the dock for the second year, said option to be exercised on or before April 1st. This option will not, however, interfere with the possible sale of the property. You will understand that the dock is the property of Mrs. C. F. Lewis, whose authority I have to negotiate for her in the matter. The year is understood to end on July 1st, next. It is also understood, of course, in the renewing of the agreement for another year that the usual amount of business will be done. In other words, it would be hardly fair to us to have the dock tied up for a year and no business or only a small business moved.

"Yours truly,<br>"L. A. Lewis."

On April 1st Curry wrote to Lewis:

"Portland, April 1, 1907.

"Mr. L. A. Lewis, Agent for Mrs. C. F. Lewis, City.

"Dear Sir: Please be advised that we wish to renew our present lease on Columbia Dock No. 2 for one year

more, all in accordance with your letter of October 10, 1906. Please confirm.    Yours very truly,
"Northwestern Warehouse Co.,
"By C. E. Curry."

To which Lewis replied:

"April 2, 1907.

"Northwestern Warehouse Co., City,

"Gentlemen: I beg to acknowledge receipt of your favor of the 1st inst. advising that you wish to renew your present lease on Columbia Dock No. 2 for one more year. In accordance with my letter of October 10, 1906, this is satisfactory, provided, as stated in my letter, I have the privilege of selling the property at any time, and provided that business put through the dock is up to the normal volume which you have done from year to year. The year is from July 1st, 1907, to July 1st, 1908.

"Yours very truly,
"L. A. Lewis."

Defendant occupied the dock, under the arrangements set forth in these letters, until July 1, 1908; and, without further agreement, held over during the year ending July 1, 1909. Both parties have recognized the holding over as being under the terms and conditions of the agreement for the previous year, plaintiff demanding a rental based on the rate specified for the grain handled, but on a minimum limit of 60,000 tons; and defendant contending that the actual amount of the grain handled determines the amount of rental. The amount of grain handled during that year over the dock was 37,167 tons and 1,911 pounds, and 11,749 tons and 1,611 pounds were scoured and graded, amounting to $6,045.19, which sum defendant has paid. The court held that by the terms of the agreement for the year ending July 1, 1908, defendant was liable only for the amount determined upon the grain actually handled, and gave judgment for the defendant. Plaintiff appeals.    REVERSED.

For appellant there was a brief over the names of *Mr. Steuart B. Linthicum* and *Messrs. Snow & McCamant,* with an oral argument by *Mr. Zera Snow.*

For respondent there was a brief over the names of *Messrs. Dolph Mallory, Simon & Gearin,* with an oral argument by *Mr. Rufus Mallory.*

Opinion by MR. CHIEF JUSTICE EAKIN.

Most of the facts are stipulated, but some oral testimony was taken.

1. When defendant held over after the expiration of the lease, both it and the plaintiff treated the situation as a holding over under the terms of the lease of the previous year; and it only remains to determine whether by the terms of the lease a minimum rental was stipulated by the statements in plaintiff's letter of October 10, 1906, namely, "It is also understood, of course, in the renewing of the agreement for another year that the usual amount of business will be done"—having reference to the renewal option reserved in the letter of October 9th. This condition is reiterated in plaintiff's letter of date April 2, 1907, viz.: "Provided the business put through the dock is up to the normal volume which you have done from year to year." Plaintiff's original proposition or offer, of date October 5, 1906, was: "A flat rate of 15 cents per ton for passing over the dock and a rate of 4 cents per ton for scouring and grading would be, under present conditions, a fair charge to make"—defendant to bear the expense of the care of the dock. Defendant did not unconditionally accept this offer by its letter of October 9th, but added two additional terms, that defendant would pay half the expense of employing the watchman, and that it should have an option until April 1st for a renewal of the lease for another year; and plaintiff in accepting these conditions by letter of October 10th added the qualification above quoted therefrom.

It is disclosed by the testimony of Curry, defendant's agent, that prior to the correspondence he and Lewis had a conversation about the rental of the dock, in which he said to Mr. Lewis that in past years defendant's business had averaged from 50,000 to 60,000 tons; that he made that statement because he was asked to do so by Mr. Lewis as he wanted to know what the business had been as a basis upon which to make an offer for the rental; that Curry knew as a matter of fact that, when Lewis wrote the letter of October 5th, it was on the assumption that defendant's usual amount of business would be done during the year, and that witness understood from the letter of October 10th that defendant was to have the dock for the year ending July 1, 1907, on a tonnage basis, provided defendant did its usual amount of business; and, after receiving plaintiff's letters of October 10th and April 2nd, defendant, without demur thereto, continued to occupy the dock, and thereby acquiesced in that condition. This, together with the clauses above quoted, clearly shows that Lewis was seeking to place a minimum limit upon the rental, and made that fact plain to the defendant. We find that the rental was to be computed upon the amount of grain handled, with a minimum limit according to the average business done by defendant in previous years; and that being the contract by the renewal for the year ending July 1, 1908, it became also the contract for the year ending July 1, 1909. There is no basis for determining the average business of defendant in previous years other than the statement of Curry, defendant's agent, which seems to be accepted by both parties as the average. There is, however, a conflict between Curry and Lewis as to what Curry stated the average to be, plaintiff contending that Curry said the average was 60,000 tons. Curry testifies that he said from 50,000 to 60,000 tons. In view of the fact that, when the business exceeded the average

amount, plaintiff had the benefit of the increased business, we are disposed to accept the smaller amount of 50,000 tons as the basis for computing the minimum rental, and find that judgment should have been rendered in the circuit court for the amount of $1,924.80, as the balance due.

2. It was urged at the argument that, in an action where the case was tried by the court, the findings of the court are to be deemed a verdict, and therefore conclusive on this court.  If such findings are made from evidence erroneously admitted, or upon an erroneous view of the law, the findings based thereon will be disregarded. In *State* v. *Rader*, 62 Or. 37 (124 Pac. 195), in discussing this question, Mr. Justice McBRIDE says:  "The amended Section 3, Article VII, of our Constitution, provides that 'no fact tried by a jury shall be otherwise reexamined in any court in this State unless the court can affirmatively say that there is no evidence to support the verdict.'  Laws 1911, p. 7 (p. xxiv, L. O. L.).  But, for a jury to find the fact the court must see that they receive only legal evidence, and no good finding of fact can ever be predicated upon illegal evidence."  And the same may be said of an erroneous view of the law.  In *City of Portland* v. *Nottingham,* 58 Or. 1 (113 Pac. 28), Mr. Justice BURNETT, in discussing a similar question, holds that the verdict "must be under the superintendence of the court.  The rules of law applicable to the case must be declared by the court, and the action of the jury must be in obedience to those rules."

We conclude that, if the court erroneously assumed that plaintiff was only entitled to rental upon the basis of the grain actually handled, his findings are subject to review.  Therefore, under the provisions of Section 3, Article VII, of the Constitution as amended, the whole record of the case being before us, from which we can determine what judgment should have been rendered in

the trial court, the mandate shall direct the circuit court
to enter judgment for the plaintiff and against the
defendant for the sum of $1,924.80, and for costs and
disbursements in both courts.                    REVERSED.