Argued October 6, reversed and remanded November 10, 1914, modified and affirmed on rehearing April 13, 1915.

## HOAG *v.* WASHINGTON–OREGON CORPORATION.

(144 Pac. 574; 147 Pac. 756.)

**Exceptions, Bill of—Contents—Whole Testimony.**

1. Under Section 171, L. O. L., providing that no particular form of exception shall be required, but that the objection shall be stated with so much of the evidence and other matter as is necessary to explain it and no more, a purported bill of exceptions, which is a full transcript of the evidence taken at the trial consisting of 440 typewritten pages, is not a bill of exceptions except as to the motion for nonsuit, and will be considered only for that purpose.

**Exceptions, Bill of—Contents—Statutory Requirements.**

2. Section 171, L. O. L., providing that no particular form of exception shall be required, but that the objection shall be stated with so much of the evidence and other matter as is necessary to explain it and no more, was not affected by the amendment to Article VII, of the Constitution, in 1910 (see Laws 1911, p. 7), which provides among other things that either party might have attached to the bill of exceptions the whole testimony.

**Master and Servant—Injuries to Servant—Negligence of Superintendent—Employers' Liability Act.**

3. Under the Employers' Liability Act (Laws 1911, p. 17), Section 2 of which provides that the manager, superintendent, foreman, etc., is held to be the agent of the employer, but does not create a liability upon the superintendent or manager, an injured employee may recover against the employer for the negligence of the manager or superintendent, but not against the manager or superintendent personally.

**Master and Servant—Injuries to Servant—Master's Liability—Delegation of Duty.**

4. Where the manager and superintendent of an electric company superintended the work of repairing the wires, and the superintendent

himself turned on the current while the lineman was in a place of danger, the company is liable for the superintendent's act, notwithstanding his claim that another lineman had assumed the responsibility of looking out for the safety of the men.

### Trial—Instructions—Questions of Law—Question for Court.

5. In an action for personal injuries to the servant, the court should instruct the jury whether the action comes within the Employers' Liability Act (Laws 1911, p. 16), or under the common-law rules, and not leave that question for the jury to determine.

### Master and Servant—Injuries to Servant—Laws Governing—Employers' Liability Act.

6. Where an employee was injured while repairing electric wires, the case was clearly one of work in repairing or altering a structure involving danger and came within the provisions of the Employers' Liability Act (Laws 1911, p. 16).

[As to what is accident arising out of and in course of employment within Employers' Liability Act, see note in Ann. Cas. 1912D, 1284.]

### ON REHEARING.

### Master and Servant—Action for Injury—Sufficiency of Complaint.

7. A complaint in a lineman's action against his employer, an electric company, and its superintendent and general manager, charging that, while he was engaged in repair work under the direction and supervision of its superintendent and general manager, a high-tension current was turned on near-by drop wires without notice to him, though the danger of his situation was known, whereby he was badly shocked, burned and disfigured, stated facts sufficient to justify a recovery under the common law, or under the statute (Employers' Liability Act; Laws 1911, p. 16).

### Action—Joinder—Separate Causes of Action—"Cause of Action."

8. Within Section 67, L. O. L., requiring that a complaint shall contain a plain and concise statement of the facts constituting the cause of action, a "cause of action" comprehends a legal right on the part of the plaintiff, and a breach of a corresponding duty on the part of the defendant to accord that right, so that all breaches of legal duty arising out of one transaction, whether flowing from the common law or from the statute, constitute but one cause of action, unless the statutory remedy is so inconsistent with the common-law remedy that the same judgment could not be rendered upon recovery, in which case the plaintiff may be required to elect upon which cause of action he will proceed.

### Master and Servant—Action for Injury—Pleading—Single Cause of Action—Instructions.

9. In a lineman's action for injury while repairing wires, by the act either of his employer's general manager or superintendent in the turning a current on near-by drop wires without notice to him, although they knew of his dangerous situation, whereby he was injured, wherein the defendant employer, without demurrer or motion to make more definite and certain or to elect, answered, denying all allegations of negligence, and pleading assumption of risk and contributory negligence, and in which the testimony went in with few objections on

either side, the case permitted recovery either at common law, or under the Employers' Liability Act, in which the measure of damages was the same, so that it was not error to instruct as to defendant's liability at common law, and under the statute, and that if the acts charged showed a liability or want of liability, tested by the whole law, they should return a verdict consonant therewith, and that under the Employers' Liability Act the defenses of contributory negligence and assumption of risk should be eliminated.

#### Appeal and Error—Harmless Error—Admission of Evidence.

10. In a lineman's action for injury, joining the employer's general manager, the allowance of the cross-examination of the manager so as to give him an opportunity to state that he had nothing to do with the installation of certain wires and release himself from any liability on that account, if erroneous, was harmless.

#### Master and Servant—Action for Injury—Evidence.

11. In a lineman's action for injury while repairing wires, by the turning on of a current on nearby drop wires, evidence as to the dangerous situation of the drop wires was material upon the degree of care required of defendants in causing the current to be turned on them while plaintiff was working near them.

#### Trial—Objection to Evidence—Sufficiency.

12. The objection that testimony is immaterial, irrelevant and incompetent, without any statement as to why it is so, is insufficient.

#### Master and Servant—Representatives—Liability—Warning.

13. The general manager of an electric company, and its superintendent, both representing it in repair work, were bound to exercise reasonable care to prevent injury to a lineman, and, under the Employers' Liability Act, it was the duty of each to use every care practicable for his safety, and they were liable for their failure to warn him of the fact that a current had been turned on near-by drop wires, as to which he was ignorant, and which, together with their failure to warn, was the proximate cause of his injury.

#### Appeal and Error—Harmless Error—Conduct of Trial—Remarks of Court.

14. The act of the trial judge in reading portions of the Employers' Liability Act to the jury, and remarking after he had read its title that the act was passed by an affirmative majority in 1910, and became effective December 3, 1910, was not prejudicial error.

#### Trial—Instructions—Reading from Statute.

15. In a lineman's action for injury, the action of the trial court, after reading a section of the Employers' Liability Act, in saying that that was the point to which he directed their especial attention, and thereafter reading the part providing that all persons in charge of or responsible for any work involving danger to an employee should use every practicable precaution and device for safety, was not objectionable.

#### Trial—Instruction—Ignoring Issues, Defenses or Evidence.

16. In a lineman's action for personal injury from the turning on of current on drop wires near where he was working, a charge on an employer's duty to use every precaution and device practicable for

safety, ignoring the limitation of duty by the necessity for preserving the efficiency of the structure or device, was misleading.

#### Trial—Instructions—Duty of Jury.

17. An instruction that it is the jury's duty to follow the instructions given, and they were bound to decide a case without any feeling or prejudice for or against the plaintiff, the corporation defendant, or the individual defendants, and on its merits, as between two individuals, was proper.

#### Trial—Instructions—Appeal to Sympathy.

18. In a lineman's action for injury from a current turned on drop wires near those which he was repairing, the court's addition to a requested proper instruction on the jury's duty to follow the law, by stating that, so far as sympathy and prejudice were concerned, neither had any place in a courtroom, but that did not mean that a man had to steel himself against his sympathies, but only that, if they believed the facts one way, they ought not let sympathy alone find a verdict, in view of plaintiff's crippled condition and defendants' gross negligence, was erroneous as allowing the play of sympathy.

#### Appeal and Error — Review — Reversal — Technical Errors—Constitutional Provisions.

19. Under Article VII, Section 3, of the Constitution, as amended in 1910 (Laws 1911, p. 7), providing that, in actions at law where the value in controversy shall exceed $20, the right of trial by jury shall be preserved, that on appeal to the Supreme Court either party may attach to the bill of exceptions the whole testimony, the instructions, and any other matter material to the decision on appeal, that, if the Supreme Court is of the opinion that the judgment appealed from should have been rendered in the case, it shall be affirmed, notwithstanding error at the trial, that, if of opinion that the judgment should be changed, and that it can determine the judgment which should have been entered, it shall direct the entry of such judgment as in equity cases on appeal, the Supreme Court, on appeal by defendant in a servant's action for personal injury, and on a showing of trial error in the instructions rendering the verdict and the judgment thereon erroneous, but not void, and with all the testimony before it, would retry the case, set aside the judgment below, and enter the judgment which should have been rendered.

#### Statutes—Construction—Legislative Intent.

20. Statutes should be interpreted according to the legislative intent, to be ascertained from the whole statute and a consideration of the mischiefs which it was designed to remedy.

#### Jury—Right to Trial by Jury—Power of Legislature.

21. The legislature cannot enact a law abolishing jury trials in law actions, nor can a law court arbitrarily refuse to allow a jury to be called in such cases.

> [As to relation of Magna Charta to jury trial, see note in Ann. Cas. 1914A, 873.]

#### Constitutional Law—Construction—Repugnant Provisions.

22. Where two provisions of a written Constitution are repugnant to each other, that which is last in order of time and in local position is to be preferred.

**Constitutional Law—Construction—General and Particular Intent.**

23.   A general intent must control a particular intent, though such rule must sometimes give way, and effect be given to a particular intent plainly expressed in one part of a Constitution, although apparently opposed to a general intent deduced from other parts.

**Damages—Measure of Damages—Personal Injury.**

24.   A lineman 30 years of age, who was earning $2.50 a day, and who, as a hook-tender in a logging camp, could occasionally earn $3.50 to $5 a day, who was badly crippled, though not wholly disabled from doing some light work, would be fairly compensated for his injury by an award of $14,000.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.   Statement by MR. JUSTICE EAKIN.

In July, 1912, Willis D. Hoag was a lineman for the Washington-Oregon Corporation, a corporation being at work on its line near Cornelius, Washington County, Oregon, under the direction and supervision of W. R. Turner, its general manager, and Art Gilmore, its superintendent.   The current of electricity had been turned off for said repair work.   The complaint states that, while plaintiff was engaged in said repair work, the high tension current was turned on the wires without notice to him, by which he was badly burned and disfigured; that the said Turner and Gilmore caused the said current to be turned on said wires well knowing the danger of plaintiff's situation.   Plaintiff sued the said Turner and Gilmore jointly with the said company.   Upon the trial the court instructed the jury that, if they found the case was one where the liability of defendant was controlled by the Employers' Liability Act of 1910, they should apply that law exclusively without reference to the common-law liability; but, if they found that law did not apply to the case, they should apply the principles of the common law, and he instructed them as to the interpretation of the statute and as to the rules of the common-law

liability.   The jury found in favor of plaintiff for $30,000.   From a judgment thereon defendant appeals.

                                   Reversed and Remanded.

For appellants there was a brief over the names of *Mr. Charles A. Johns, Mr. P. C. Sullivan, Mr. M. A. Longhorne* and *Mr. Claude M. Johns,* with oral arguments by *Mr. Charles A. Johns* and *Mr. Sullivan.*

For respondent there was a brief over the names of *Mr. A. E. Clark* and *Mr. Roscoe F. Hunt,* with an oral argument by *Mr. Clark.*

Mr. Justice Eakin delivered the opinion of the court.

1. We find, first, that the book in the record labeled "Bill of Exceptions" is the full transcript of the evidence taken at the trial and certified by the judge.   It consists of about 440 typewritten pages, and is not such a bill of exceptions as is contemplated by Section 171, L. O. L., or by the rules of the court.   Upon this question see the cases cited under Section 169, L. O. L.   As already stated in *State* v. *Murray,* 11 Or. 413 (5 Pac. 55), and in *Eaton* v. *Oregon R. & N. Co.,* 22 Or. 498 (30 Pac. 311), this court lays down the rule as to what constitutes a proper bill of exceptions.   It may be stated in narrative form, such as there is testimony tending to prove, etc., and need not be prolonged by question and answer, objections and argument of counsel.   Section 171, L. O. L., provides:

"The objection shall be stated with so much of the evidence or other matter as is necessary to explain it, but no more."

2. And this rule still obtains and is not affected by the 1910 amendment of Article VII of the Constitution (see Laws 1911, p. 7).   Many cases come to this court

in which the bill of exceptions is the full transcript of the testimony. This court has taken great pains to explain this matter, but many lawyers have either not seen the decisions or carelessly sent up the whole testimony without a formal bill of exceptions: See *Willis* v. *Horticultural Fire Relief of Oregon* 69 Or. 293 (137 Pac. 761) ; *Bigelow* v. *Columbia Gold Min. Co.*, 54 Or. 452 (103 Pac. 56, 1007) ; *Oldland* v. *Or. Coal & Nav. Co.*, 55 Or. 345 (99 Pac. 423, 102 Pac. 596) ; *Hahn* v. *Mackay*, 63 Or. 100 (126 Pac. 12, 991) ; *Keady* v. *United Rys. Co.*, 57 Or. 325 (100 Pac. 658, 108 Pac. 197) ; *West* v. *McDonald,* 67 Or. 551 (136 Pac. 650) ; *Litscher* v. *Alexander,* 68 Or. 369 (136 Pac. 847) ; *National Council* v. *McGinn,* 70 Or. 457 (138 Pac. 493). The bill of exceptions is intended as an aid to the court in finding the particular facts bearing upon a certain exception. The court has often protested that it will not read such a mass of testimony in an investigation of an assignment of error. The pretended bill of exceptions in this case is not in any sense such except as to the motion for nonsuit, and we will ignore it for any other purpose.

The instructions of the court include the construction of the Employers' Liability Act of 1910 (Laws 1911, p. 16). So far as it is not dependent upon the bill of exceptions we will discuss the instructions in the light of the issues. The action must be considered as brought and to be determined under that act. The issues tender no suggestion that could be treated under the common-law liability.

3. As to the motion for nonsuit, the statute of 1910 gives a remedy against contractors, etc., and only contemplates a liability against employers. Section 2 of the act provides that the manager, superintendent, foreman, etc., in charge or control of the work shall be

held to be the agent of the employer, and the act does not create a liability upon the superintendent or manager. This is decided in *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292 (131 Pac. 314, 134 Pac. 1037), where it is said by Mr. Justice Moore:

"It is evident that an employer, whether owner, contractor or subcontractor, who is engaged in the construction of a building, is the only party defendant in an action to recover damages."

But the manager or superintendent is to be held the agent of the employer.

4. In this case the turning on of the current is admitted by appellant to be the proximate cause of the injury, and Gilmore, the superintendent, actually turned on the current. The manager and superintendent were both on the ground supervising the work, and should have looked after any matter where there was danger or risk to the lineman; and they cannot excuse themselves by saying that another lineman assumed that responsibility and thus relieve themselves. The company was responsible for such negligence, and the evidence was sufficient to go to the jury on that question; and the motion for a nonsuit was properly denied as to the company.

5. The principal instruction which we may consider relates to the application of the 1910 statute. The trial judge in instructing the jury discussed that law at great length. This case evidently comes within that act, and it was the duty of the court to instruct the jury as to its application. Reading the law at length to the jury was likely to involve them in the determination of questions not relating directly to the issues. If any issues disclosed a liability that did not come within this statute, the court should have pointed it out to the jury

and given instructions in relation thereto. The court in the trial of the case fell into the error mentioned in *Schulte* v. *Pacific Paper Co.,* 67 Or. 334 (135 Pac. 527, 136 Pac. 5), which was not decided until after this case was tried. The jury was left to apply the law of 1910 if it desired and to determine for itself to what extent it applied to the case. This judgment must be reversed upon the authority of the Schulte case and remanded for new trial. The statute provides that an employer having charged any work involving risk or danger to employees shall use every precaution practicable for the safety of life and limb, and the manager and superintendent in charge or control of the work shall be held to be the agent of the employer. That is a brief statement of the liability leaving out all verbiage not applicable to this case. The court instructed the jury as to the common-law liability of the defendant company, and went into detail as to three elements of the common-law liability, namely, the fellow-servant rule, the assumed risk, and contributory negligence; but those elements are defenses in a common-law action, and are affected by the statute of 1910. The first two elements are entirely eliminated by the statute, and the one modified; but the instructions of the court wholly fail to enlighten the jury as to what facts would take the case out of the statute, and the jury was left entirely in the dark on that question. In any event, it was his duty to control them on the issues and the law applicable thereto, and not to leave them to say what questions were under the common law and what evidence was applicable thereto.

6. The case was clearly a case of an owner doing work of repairing or altering a structure involving danger, and came under the statute; and whether proper care and precaution were used, or contributory negligence was established as an element affecting the

amount of damages, should have been presented to the jury.

The judgment is reversed and the cause dismissed as to Turner and Gilmore, and remanded for such further proceedings as may seem proper.

REVERSED AND REMANDED.

Mr. Chief Justice McBride, Mr. Justice Bean and Mr. Justice Burnett concur.

---

Rehearing granted December 1, 1914, reargued on rehearing March 1, modified and affirmed April 13, 1915.

### On Rehearing.

(147 Pac. 756.)

On application of appellants a rehearing was granted herein, and upon further consideration of the case the judgment of the lower court is set aside, and one entered in this court in favor of plaintiff and against all the defendants for the sum of $14,000 and costs. A full statement of the case is set forth in the majority opinion of the court. MODIFIED AND AFFIRMED.

For rehearing there was a brief over the names of *Mr. Charles A. Johns* and *Mr. Claude M. Johns,* with an oral argument by *Mr. Charles A. Johns.*

*Contra,* there was a brief over the names of *Mr. A. E. Clark, Mr. M. H. Clark* and *Mr. Roscoe F. Hunt,* with an oral argument by *Mr. A. E. Clark.*

In Banc. Mr. Justice McBride delivered the opinion of the court.

At the former hearing, the case having been reversed upon a single point, a full statement of the contentions

of the parties was deemed unnecessary. We will re-state the matters at issue in more minute detail. The case as set forth in appellant's brief is as follows:

"The plaintiff, Hoag, was in the employ of the defendant Washington-Oregon Corporation as a lineman on its electric properties at and near Cornelius, in the County of Washington and State of Oregon. The defendant Turner was the manager of the properties of the corporation in that section, and the defendant Gilmore was foreman of its lines in that section. While at work as such lineman, and engaged in repairing the wires of the corporation, and on July 23, 1912, Hoag sustained certain personal injuries, and brought an action to recover damages against each of the defendants, basing his complaint upon negligence, and alleging, in substance, that while the plaintiff was engaged in tying a wire to an insulator the current was turned upon one of the high-tension wires without his knowledge, and 'that either the said Art Gilmore, acting as superintendent for the said defendant corporation, or the said W. R. Turner, acting as general manager, ordered said current of electricity to be turned into each of the said high wires,' without notice or warning, by reason of which he sustained his injuries; that the defendants were careless and negligent, and disregarded the safety of the plaintiff in constructing the drops from the high wires, and in allowing the same to hang in close proximity to the wires below, and in failing to use full and complete, or any, insulation on said high wires or drops, or adequate insulation upon said wire which plaintiff was ordered to tie; that the defendants were careless and negligent in mingling dead wires with live wires and in stringing them upon the same support, and disregarded the safety of the plaintiff in failing to string its live electrical wires carrying a high voltage at such distance from the pole, crossarm, and wires as to permit the plaintiff to freely engage in the work he had been ordered to do without

·danger of shock, and that they were careless and negligent in failing to provide a system of communication by means of signals, or otherwise, by which the plaintiff would be warned of the transmission and use of electricity, and that no system of communication or signals had been established or was in use at the time plaintiff received his injuries; that plaintiff was not warned by any signal; that the defendants failed and neglected to use suitable material or safety appliances or devices commonly in use in such construction; that the said Art Gilmore or the said defendant W. R. Turner carelessly and negligently, and with utter disregard for the safety of the plaintiff, ordered and directed said powerful current of electricity to be turned into said high wires without any notice, information, or warning to the plaintiff.   The corporation filed its answer, and the defendants Turner and Gilmore filed their joint answer to the complaint.   All of the material allegations of the complaint were denied by each defendant, and for a further and separate answer it was alleged: That the plaintiff was a fellow-servant of the defendants Gilmore and Turner and of W. J. Moon, and setting forth the construction of the poles and wires and their relative distance from each other, and the distance of the substation from the pole upon which plaintiff was injured; that the plaintiff knew the current had been turned on the high wires when he ascended the pole for the purpose of tying the wire upon the insulator, and that he was injured through his own negligence and carelessness in raising the wire which he was seeking to tie in such a manner and to a point where it came in contact with one of the drops from the high-tension wires leading to the substation, and that he knew it was dangerous and unsafe to bring such wires in contact with each other; that he was a lineman, and knew the risks and dangers of his work, and understood the duties which he was to perform, and that W. J. Moon, who was a fellow-servant of the plaintiff, ordered and directed the current to be turned on, and the plaintiff had knowl-

edge of that fact at the time that he ascended the pole, and was engaged in his work where he sustained his injuries. A reply was filed denying each and all of the further and separate answers of the defendants. At the conclusion of plaintiff's testimony, the defendants Gilmore and Turner filed a motion for nonsuit, which was overruled. The entire charge of the court is oral, except as to the instructions which were requested by the defendants, some of which were given as requested, and some of which were modified, and others refused; but all of which were read to the jury. The defendant corporation is the owner and operator of certain electric power transmission lines in Washington County, and the plaintiff was in its employ as a lineman, and at the time of his injury was at work on the lower cross-arm of pole No. 2, near the substation at Cornelius, and in some manner brought a dead wire upon which he was at work in contact with one of the drops leading to the substation carrying about 10,000 volts. The plaintiff claims that his injuries were caused by faulty construction and turning on of the current without his knowledge; and the defendants claim that it was caused by his own carelessness and negligence in bringing the dead wire upon which he was at work in contact with the live wire, and that he knew the current was turned on the high wires and the drops which lead from and were supported on the upper crossarm on the pole, and that Moon, who was a fellow-servant of Hoag, directed the current turned on, and that Hoag had knowledge of such order. * * The court gave a very exhaustive charge on both the common-law liability and under the Employers' Liability Act. The jury returned a verdict against each of the defendants for $30,000. Each of the defendants filed a motion to set aside the verdict and judgment, and to grant a new trial, which was overruled. This appeal is prosecuted from the judgment which was entered on the verdict. At the request of the defendants, the jury viewed the premises.''

7. Beyond question the complaint states facts sufficient to justify a recovery either under the common law or under the statute, but it states only one cause of action.

8. In common with all the Code states, our statute (Section 67, L. O. L.) requires a complaint shall contain "a plain and concise statement of the facts constituting the cause of action." A "cause of action" comprehends two elements: (1) A legal right on the part of the plaintiff; and (2) a breach of a corresponding duty on the part of the defendant to accord that right: Pomeroy's Rem., § 452; Words and Phrases, tit. "Cause of Action." From this definition it follows, necessarily, that all breaches of legal duty arising out of one transaction, whether flowing from common law or from the statute constitute but one cause of action, unless the statutory remedy is so inconsistent with the common-law remedy that the same judgment could not be rendered upon recovery. In such instances the plaintiff may be required to elect upon which cause of action he will proceed. Thus in *Harvey* v. *Southern Pac. Co.*, 46 Or. 505 (80 Pac. 1061). the plaintiff brought an action for the killing of stock upon a railroad track, and in his complaint set up in a single count facts showing a right of recovery at common law, where the measure of damages is the value of the animals injured, and a right of recovery under the statute which gave, under certain circumstances, triple damages for a like injury. It was held that he might have been required to elect upon which cause he would proceed, but that, the defendant having failed to move for the court to compel such election on the trial, he could not afterward raise the objection. The reason for this holding is apparent, because, if a jury should return a general verdict, the court would

be unable to determine whether to assess triple damages or to enter judgment for the amount found in the verdict.

9. But in the case at bar the measure of damages is the same in either case; the difference between the common-law liability and that arising under the statute being that additional duties on the part of the employer to the employee are added by the statute to those existing at common law. The whole obligation of the employer to the employee is the sum of all the duties imposed by law, whether common law or statute, and the rights of the employee to redress for a breach of these duties arises from the law, considered as a whole, irrespective of its source. The case presented by the pleadings involved a double aspect charging matters upon which a recovery might have been had either at common law or under the Employers' Liability Act, and the defendant, without demurring, moving to make more definite and certain, or to elect, promptly answered, denying all allegations of negligence and pleading assumption of risk and contributory negligence. The testimony went in with few objections on either side, and it was only when requests for instructions were refused or when objections to instructions given were excepted to that the question as to the double aspect of the case was raised. After a careful examination of the authorities, including *Schulte* v. *Pacific Paper Co.*, 67 Or. 334 (135 Pac. 527, 136 Pac. 5), and our former opinion in the case at bar, we have arrived at the conclusion that, under the pleadings and evidence in this case, it was not error for the court to instruct both as to the liability of the defendant at common law and under the statute, and to say to the jury that, if the acts showed a liability or lack of liability, as tested by the whole law on the subject,

they should render a verdict consonant with the law considered as a whole; and, further, that if facts showed a breach of the employers' liability statute, the defenses of contributory negligence and assumption of risk should be eliminated.   This the court, in effect, did in a charge remarkable for its general grasp of the whole subject and the accuracy of its distinctions.   It only remains to consider the objections to the introduction of evidence and the charge of the court in detail to determine whether any portions of it were inapplicable to the facts presented or the issues involved. It may be premised it was wholly oral and consumed 2½ hours in its delivery and that the requests of defendant were numerous covering every possible phase of the case considered as a case at common law.

10, 11. The first exception is to the court's having allowed the plaintiff's counsel to ask defendants' witness, C. M. Turner, upon cross-examination certain questions as to the manner in which the drop wires were placed and certain poles were located, the evident intent of which questions was to elicit from the witness an admission that some other method of placing or insulating them would have rendered an accident less probable.   This attempt was a failure, as the answers of the witness were, on the whole, rather favorable to the defendant Turner, and were in no instance to the detriment of the other defendants.   They gave Turner an opportunity to state that he had nothing to do with their installation, and thereby released him from any liability on that account.   The error, if any was committed, upon which branch of the objection it is unnecessary to express an opinion, was harmless.   Testimony as to the dangerous situation of the drop wires was in itself material as having a bearing upon the degree of care required of defendants' agents in caus-

ing or permitting the high-voltage current to be turned on while plaintiff was working in their vicinity, and it was also relevant and competent to the issues presented. That it was not proper cross-examination is not covered by any of these expressions.

12. Indeed, it has been held that the objection that testimony is "immaterial, irrelevant and incompetent," without any statement as to why it is so, is a mere meaningless formula, and tantamount to no objection at all: *Shandrew* v. *Chicago, St. P., M. & O. Ry. Co.,* 142 Fed. 320 (73 C. C. A. 430). It is, however, not necessary to adopt so stringent a rule in this case.

13. The next objection is to the refusal of the court to grant a nonsuit as to the defendant Turner. It is urged that the evidence shows that Gilmore ordered the current to be turned on, and that this was the proximate cause of the injury, and that, this being so, no right of recovery exists against Turner. Both the premise and conclusion are unsound. Turner was the defendant company's general manager, and Gilmore its superintendent. Both were representing it upon the work, and at common law it was the duty of each to exercise reasonable care and precaution to prevent injury to the plaintiff, and under the employers' liability law it was the duty of each to "use every care and precaution which it is practicable to use for the protection and safety of life and limb." This certainly included warning plaintiff of the fact that the high-voltage current had been turned on, a fact which they both knew, and of which plaintiff was ignorant. The proximate cause of the accident was the turning on of the current, plus the failure to warn. The complaint alleges that one or the other of these two agents ordered the dangerous current turned on; that both of them knew of the situation and danger of plaintiff;

and that no warning was given; and the evidence sustains the allegation. The motion for nonsuit was properly denied.

We have already discussed the action of the court in instructing the jury both upon the common law and statutory right of recovery, and the objections based upon this ground need not be further considered.

14. Another objection urged is that the judge, in reading portions of the Employers' Liability Act to the jury in the course of the trial, also read the title of the act, remarking that the act was passed by an affirmative majority in 1910, and became effective December 3, 1910. It is difficult to see how this could have in any way affected the verdict.

15. The next objection is that the court read Section 1 of the Employers' Liability Act to the jury in full, saying: ''This is the point to which I direct your especial attention,'' and reading thereafter this portion:

''And, generally, all owners, contractors, subcontractors, and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care, and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the machine or other apparatus or device, and without regard to the additional cost for suitable materials or safety appliances or devices.''

By calling especial attention to the matter quoted, the court adopted it in connection with its other instructions upon the same subject as applicable to the case in hand, and it was. It is no objection to the instruction that the court used the exact language of the statute, instead of an equivalent in terms of its own.

Nothing can be clearer to the average mind than the plain language of this portion of the statute. It needed no further construction.

16. Exception is also taken to the following instruction:

"The limitation which is in there which says, 'limited only by the necessity for preserving the efficiency of the structure, machine, or other apparatus or device,' makes it necessary for the jury to say whether the requirements of that law could have been complied with by the defendants, and the efficiency of the structure, machinery, or other apparatus or device preserved. If it could be preserved, then it was the defendant's duty for the protection of employees to do everything that is provided for in that act, and, if they could have preserved the efficiency of their apparatus out there by so doing, then in that event this law applies, and not the common law; and, if this law applies, there is another matter which I call to your attention," etc.

It is objected that this instruction ignores the element of practicability, and makes it the duty of the employer to take every care and precaution limited only by the necessity for preserving the efficiency of the structure; and, taken alone as a detached portion of the charge, it might be so construed.

It is plain that, if precautions such as insulating the high-pressure wires would involve an expenditure that would preclude the construction or operation of the line, such precautions would be impracticable, and, while it is not shown that the omission of this element of the law misled the jury, we cannot say that it did not have that effect.

17, 18. Many other objections are urged, and perhaps some technically well taken, but none, in our judgment. were likely to have misled the jury, except the follow-

ing: The defendants' counsel asked the following instruction:

"I instruct you that it is your duty to follow the law and the instructions given you by the court, and that you must decide this case without any feeling, sympathy or prejudice for or against the plaintiff or either of the defendants, and decide the case on its merits, the same as you would between two individuals."

This the court gave, adding, however, among other matters, the following:

"So far as sympathy and prejudice are concerned, neither sympathy nor prejudice has any place in a courtroom. Hew to the line; let the chips fall where they may. But that doesn't mean that a man has got to steel himself against his sympathies and do away with his heart—the spiritual that is in man; that is, the combination of head and heart. It simply means that, where you believe the facts are one way, you ought not let sympathy, and sympathy alone, find a verdict for the man; but it does not mean that you are to shut the avenues to your heart when you think the facts of the case justify."

The modification tended to destroy the force of the instruction, and rather intimated to the jury that, while they should not let sympathy alone induce them to find a verdict for plaintiff, it might be allowed some play in their deliberations. The instruction requested stated the law, and it should have been given without equivocal comment. There was much in this case to excite the sympathy and even resentment of the jury toward the defendants. The crippled condition of the plaintiff and the gross and inexcusable negligence of defendants' agents were in themselves calculated to arouse feelings which might lead to an extravagant

verdict, and the instruction, as given, tended quite as much to stimulate as to allay these sentiments.

19. There was error in the two respects last alluded to, and, under the law as it stood before the constitutional amendment of 1910 (Laws 1911, p. 7), we would have been compelled to send this case back for retrial. The third section of the amendment cited is as follows:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. Until otherwise provided by law, upon appeal of any case to the Supreme Court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the Supreme Court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court: Provided, that nothing in this section shall be construed to authorize the Supreme Court to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which the accused was convicted in the lower court."

As appeal is not a constitutional right, but a statutory privilege, an appealing party exercises it *cum onere,* and, under the authority of the amendment cited, this court has the discretion, so far as the appel-

lant is concerned, error in the court below being shown, either to retry the case here, or to send it back to the lower court for retrial: *State* v. *Rader,* 62 Or. 37 (124 Pac. 195); *Knight* v. *Beyers,* 70 Or. 413 (134 Pac. 787).

It may be urged that, while the observations just made in regard to the position of the appellant are not without force, the respondent stands upon a different footing; that, being here involuntarily, he has not in any way so submitted himself to the jurisdiction of this court as to have deprived himself of the rights to have his whole case resubmitted to a jury. To this it may be answered in the first place that, until he shall have objected to the modification of his judgment, the question may be considered as academic, and that upon submission of such objection by petition for rehearing, or otherwise, the judgment here may be made conditional upon his accepting the modification with the alternative of a new trial if he desires it. In our view, however, a fair construction of Article VII, Section 3 of the Constitution, as amended, gives us ample power to finally dispose of the case here, both as to the appellant and respondent. The clause, "In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved," if it stood alone, might furnish some ground for the contention that in every case of error which might prejudice the appealing party it is still obligatory upon the court to send the cause back for a retrial, as was the custom before the amendment was adopted; but it does not stand alone, and it is apparent it was intended that the succeeding language of the section should essentially modify the conclusion which would naturally arise from considering the clause last quoted as isolated and distinct from all that follows. The sec-

tiou provides that either party may bring up the whole testimony, instructions of the court, and any other matter material to the decision of the appeal; that the Supreme Court may consider the matter thus brought up, and, if satisfied that the judgment appealed from was such as should have been rendered, it may affirm the judgment, notwithstanding any error committed during the trial; or, if it is of opinion that it can from the testimony and the record determine what judgment should have been rendered, it may render that judgment, the only limitation being it shall not find a defendant in a criminal case guilty of a higher offense than that of which he was convicted in the court below. Beyond prohibiting the Supreme Court from finding a defendant guilty of murder who was convicted of manslaughter in the court below, or of assault with intent to kill where the jury below found him guilty of a simple assault, and instances of like character, the language is ample to authorize this court to try out here any case in which error was committed in the court below to the same extent and with the same right to enter judgment as is now exercised in equity cases. The errors of the lower court which we may disregard are not the mere trivial and unsubstantial errors which courts have always disregarded, but the language is "any error," which includes great and small, substantial or otherwise. Practically a mistake of law which does not affect a substantial right amounts to no real error, and has always been so treated by the courts; and, unless that portion of Article VII, Section 3, of the Constitution, is to be construed as referring to errors theretofore considered as ground for reversal, it is meaningless, and has made no change from the rules which have always prevailed in this and nearly every other appellate court.

20. The two clauses of the section, considered disjointly, are contradictory, but, when they are considered, as they should be, as parts of one section, and as modifying and explaining each other, the difficulty vanishes; and here may be invoked the salutary rule cited in Potter's Dwarris on Statutes and Constitutions, page 144, as follows:

"In the construction of a statute, every part of it must be viewed in connection with the whole, so as to make all its parts harmonize if practicable, and give a sensible and intelligent effect to each"

—and that other rule that statutes should be interpreted according to the intent and meaning of the lawgiver, to be ascertained from the whole statute, and a consideration of the mischiefs which it was designed to remedy. Now, the mischief which this amendment was designed to remedy was that long-standing and crying one of litigation unduly prolonged and justice delayed by the unnecessary retrial of cases. Appellate courts, with all the facts before them, were compelled, if the lower court had committed an error which might have resulted to the prejudice of a litigant, to be content with pointing out the error, and to send the case back to be retried before a jury, with the possibility in every case that some other error equally serious might be committed and another appeal and another reversal for the new error result. Common sense suggested to the average citizen, as well as to the lawyer, that, when the appellate court had all the facts before it, it frequently might be in a position to end vexatious litigation by taking cognizance of the whole case and deciding it once for all; and the right to trial by jury must be considered to be preserved in the modified sense that is indicated by Article VII, Section 3, as amended. The sentence, "The right of

trial by jury shall be preserved,'' is an injunction primarily upon the legislature and courts of first instance.

21. The legislature cannot pass a law abolishing jury trials in law actions, nor can a law court arbitrarily refuse to allow a jury to be called in such cases; but it does not follow that, because the court has made a mistaken ruling on a question of law in admitting evidence or instructing a jury, there has been no jury trial. The verdict is not void, nor is the judgment rendered upon it void. They are simply erroneous: Cooley, Const. Lim. (7 ed.), pp. 587, 588, and notes. The charge of the court is the standard by which the jury is to measure the evidence. If the standard given by the court is erroneous, it follows naturally that the result arrived at will be incorrect in the same degree. A wise surveyor who finds that the chain he has been using is a foot too long would not resurvey the land he had been over, but would carefully examine his notes, and, allowing for the erroneous length of his chain, make the final result conform to the actual facts. The simile is crude, but we have the chain (the instructions) and the matter to be measured (the evidence), and, instead of going through the old, ineffective and frequently unjust method of requiring a new trial on the same old facts, we ought to review the evidence here, and correct the judgment so as to make it conform to justice. This is what it was designed that the amendment in question should accomplish, and is its plain intent. So, if we give it any other construction, it means nothing, and is simply ''as sounding brass and tinkling cymbal.'' These considerations should lead the court to adopt those rules of construction which will tend to give effect to all parts of the amendment, rather than to lay such undue emphasis upon one clause that it will render another nugatory. The language

of that great jurist, Judge COOLEY, is particularly appropriate here.    Speaking of Constitutions, he says:

"Nor is it lightly to be inferred that any portion of a written law is so ambiguous as to require extrinsic aid in its construction.    Every such instrument is adopted as a whole, and a clause which, standing by itself, might seem of doubtful import, may yet be made plain by comparison with other clauses or portions of the same law.    It is, therefore, a very proper rule of construction that the whole is to be examined with a view of arriving at the true intention of each part; and this Sir Edward Coke regards as the most natural and genuine method of expounding a statute.    If any section of a law be intricate, obscure or doubtful, the proper mode of discovering its true meaning is by comparing it with the other sections, and finding out the sense of one clause by the words or obvious intent of another.    And in making this comparison it is not to be supposed that any words have been employed without occasion, or without intent that they should have effect as part of the law.    The rule applicable here is that effect is to be given, if possible, to the whole instrument, and to every section and clause.    If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory."

The language of the Constitution in relation to the right of trial by jury was a part of our original charter, and it, of course, could gain no additional force by re-enactment.    That portion of the amendment relating to retrials of cases by this court is new.

22. It is a familiar rule of construction that, where two provisions of a written Constitution are repugnant to each other, that which is last in order of time and in local position is to be preferred: *Quick* v. *White Water Township,* 7 Ind. 570; *Gulf, C. & S. F. Ry. Co.*

v. *Rambolt,* 67 Tex. 654 (4 S. W. 356). So, even assuming the two clauses discussed are repugnant, the latter must prevail.

It must also be noted that the first clause discussed is general, while the second is particular. Its terms not only permit a re-examination of a cause here in case of error in the court below, but specify the procedure by which such examination shall be had, and prescribe the limitations beyond which it must not proceed.

23. It is a general rule in the construction of statutes that a general intent appearing it shall control a particular intent; but this rule must sometimes give way, and effect must be given to a particular intent plainly expressed in one part of the Constitution, although apparently opposed to a general intent deduced from other parts: *Gulf, C. & S. F. Ry. Co.* v. *Rambolt,* 67 Tex. 654 (4 S. W. 356); *Warren* v. *Shuman,* 5 Tex. 441. In the light of these principles we are forced to the conclusion that it was the intent of the amendment to leave the appellate court the discretion either to send a case erroneously tried before a jury back to be retried, or to retry it here in the same way that it would re-examine an equity case, and that to hold otherwise would render nugatory the deliberate attempt of the people to abridge delays in the administration of justice.

This case is one in which we feel that justice will be promoted by a retrial here. We have all the testimony and everything that the jury below had when the case was submitted. The parties are not present, and we can consider the facts without sympathy or prejudice. Without discussing the evidence in detail, we think it discloses an absolute lack of any care or precaution on the part of defendants' manager and

superintendent, who were in charge of the work, to keep the place where plaintiff was working safe, to protect him from injury, or to warn him of a danger produced by their carelessness.

24. As no good verdict can be predicated upon a bad instruction, we will disregard the erroneous verdict and judgment, and consider what damages will fairly compensate plaintiff for the injury inflicted. He is a man 30 years of age, and was earning at the time of the accident the sum of $2.50 a day. As a hook-tender in a logging camp, he was capable, when he could secure employment, of earning from $3.50 to $5 per day, but this was not continuous, and, in the nature of things, is not likely to be the standard of his earning capacity, which had probably reached its maximum at the time of his injury. He is badly crippled, but it is probable that he is not so disabled that he may not be able to do some light work. Such seems to be the opinion of physicians who have examined him. In view of all the circumstances, we are of the opinion that the sum of $14,000 will fairly compensate him for the injuries he has sustained, and that there is no evidence to justify a verdict for any greater sum.

The judgment of the court below is therefore set aside, and findings and judgment will be entered here in favor of plaintiff and against all the defendants for the sum of $14,000, and for the costs and disbursements of this action.      MODIFIED AND AFFIRMED.

MR. JUSTICE BURNETT delivered the following dissenting opinion:

On the basis that there was error in the instructions of the court to the jury, it remains to determine our duty under Article VII, Section 3 of the state Constitution, as amended by the plebiscite of November, 1910 (Laws 1911, p. 7; L. O. L. xxiv), reading thus:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. Until otherwise provided by law, upon appeal of any case to the Supreme Court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the Supreme Court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court: Provided, that nothing in this section shall be construed to authorize the Supreme Court to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which the accused was convicted in the lower court."

This court, speaking by Mr. Justice McBRIDE, in *State* v. *Rader,* 62 Or. 37 (124 Pac. 195), and discoursing upon the first sentence of the section, says:

"But, for the jury to find the fact, the court must see that they receive only legal evidence, and no good finding of fact can be predicated upon illegal evidence."

Again in *Boatright* v. *Portland Ry., L. & P. Co.,* 68 Or. 26, 35 (135 Pac. 771, 774), Mr. Justice BEAN, considering the error of the trial court in refusing instructions and referring to the argument that the judgment

should be affirmed under the constitutional provision mentioned, said:

"This we cannot do from the record without invading the province of the jury. That fundamental law ordains that the right of trial by jury shall be preserved. This mandate can be obeyed only by obtaining the verdict of a regularly impaneled jury upon legally admitted evidence under proper instructions as to the law."

In *Sullivan* v. *Wakefield,* 65 Or. 528, 535 (133 Pac. 641, 643), Mr. Justice RAMSEY stated:

"A verdict, to be protected from re-examination, under the section of the Constitution cited *supra,* must be one rendered in a court having jurisdiction of the parties and of the subject matter, on a trial where there were no reversible errors of law committed by the court, and where there was some legal evidence to support the verdict."

These utterances of this court, to which there has never been any dissent either at the time or since, establish the ingredients making up a jury trial the Constitution says shall be preserved, and, as if to make assurance doubly sure, declares:

"No fact tried by a jury shall be otherwise re-examined in any court in this state, unless the court can affirmatively say that there is no evidence to support the verdict."

"It is true that subsequent provisions of this section confer power upon this court to affirm a decision of a trial court notwithstanding any error committed during the hearing or to change it and direct another disposition of the action if it shall be of opinion that it can determine what judgment should have been entered in the court below. But we must take this utterance of the people's will by its four corners and give effect to all its provisions. Where the source of all govern-

mental power has uttered mandatory words, its behest should be obeyed, and, where discretion has been conferred, it must be exercised and tempered according to the command. Indeed, the section under consideration says the Supreme Court "shall" affirm or change a judgment from which an appeal has been taken, but this, for one thing, is contingent upon the opinion of the court. For another, taken literally, it contradicts the first sentence of the section concerning jury trials. In respect to the reconsideration of a fact tried by a jury, the latter clauses cannot be construed as mandatory, or even directory, else we should have in them the paradox of an irresistible force colliding with an immovable body couched in the prohibitive language of the first clause forbidding disturbance of a verdict regularly obtained. That the exercise of our power on appeal does not include the examination of an issue of fact properly determined by a jury upon which there is a dispute in the testimony is taught in principle by the conclusion of Mr. Justice McBride in *State* v. *Rader,* 62 Or. 37 (124 Pac. 195), in these words:

"If the evidence were clear and without contradiction, we would ourselves try out the case here, as we have a right to do under our amended Constitution; but it is wholly circumstantial, and the facts can be much better determined by a jury of the vicinage than by us."

The language there used makes it plain that our authority to consider a question of fact in an action at law depends upon the evidence being all one way; a construction in harmony with the first sentence of the section. If we must construe the section under consideration as compelling us beyond discretion to finally determine every cause coming before us having the addenda to the bill of exceptions as there described, we

have violated its commands every time we reversed a
jury case and directed a new trial—notably the Rader
case.   However much they may have been deluded by
those having the passion for tinkering the Constitution,
unless it is absolutely unavoidable, we ought not to
consider that the people have stultified themselves by
saying in one breath that "no fact tried by a jury shall
be otherwise re-examined in any court of this state,"
etc., and in the next that the Supreme Court may not
only set aside a verdict at pleasure, but must also
render another in its place on the mere printed report
of contradictory testimony.

The deduction is plain that the Constitution does not
confer upon anyone the absolute right to have this
court affirm a judgment notwithstanding errors com-
mitted during the trial, or to change it in any other
respect; neither is that duty mandatory upon us.   At
best, it is only discretionary, and, controlling this dis-
cretion with authoritative power, the people have said
that we cannot re-examine a question of fact which has
been tried by a jury unless we can affirmatively say
there is no evidence to support the verdict.   This con-
stitutes an imperative restriction, and in whatever we
may do as an appellate court the trial by jury, as de-
fined by the Constitution stands as a defensive bound-
ary of civil liberty beyond which we cannot pass.   We
may do many things under the enlarged powers con-
ferred upon us by this amendment to the fundamental
law, but one thing we cannot do, and that is to re-exam-
ine a question of fact tried by a jury, unless we can
affirmatively say there is no evidence to support the
verdict.

It is true that the right of appeal is not guaranteed
by the Constitution, but the trial by jury is assured by
that instrument to every citizen.   Since the foundation

of this state it has been prescribed by the organic law
that "in all civil cases the right of trial by jury shall
remain inviolate": Article 1, Section 17, of the Consti-
tution. Tested by the standards of experience and
precedent, we may justly say that the faultless jury
trial which the Constitution commands is one in which
a cause properly stated is proven by competent evi-
dence before a jury correctly instructed as to the law:
*Lewis* v. *N. W. Warehouse Co.*, 63 Or. 239, 245 (127
Pac. 33) ; *Woods* v. *Wikstrom*, 67 Or. 581, 588 (135 Pac.
192.) We may reverse a proceeding that does not con-
form to these requirements, but we cannot take away
from any suitor his constitutional guaranty of a trial
before a jury of his peers and substitute for that our
own conception, derived from a perusal of the paper
statement of the proceedings at the original hearing.
Speaking on this point in *Buchanan* v. *Lewis A. Hicks
Co.*, 66 Or. 503, 511 (134 Pac. 1191, 1192), Mr. Justice
Moore uses this language:

"Applying this legal principle to the part of the
amended section of the Organic Act under considera-
tion, it is believed that the Supreme Court, on appeal,
is powerless to re-examine any fact tried by a jury,
unless it, like the lower court, in passing upon a motion
for a new trial, can affirmatively say there is no evi-
dence to support the verdict. * * It will thus be seen
that the right, upon appeal, to correct a judgment, rests
upon an error of law committed by the trial court, and
not upon the re-examination of any fact tried by a
jury, except in cases where the Supreme Court can
affirmatively say there is no evidence to support the
verdict."

Commenting upon the same subject, Mr. Justice
Bean, in *Sigel* v. *Portland Ry., L. & P. Co.*, 67 Or. 285,
291 (135 Pac. 866, 867), states:

"Various men might, under the evidence, reach different conclusions in regard thereto. The damages assessed by the verdict do not indicate that the same were fixed in excess of an amount fairly within the range of the evidence, so that a court can affirmatively say there is no evidence to support the verdict. The trial court did not so find. The judgment on the verdict could not be set aside without the re-examination of a question of fact which had been tried by a jury upon legal evidence and under proper instructions as to the law. * * Therefore, under the rule announced in *Buchanan* v. *Lewis A. Hicks Co.*, 66 Or. 503, 511 (134 Pac. 1191, 1192), neither this court nor the Circuit Court is authorized to set aside the verdict and grant a new trial."

The modification of the judgment in the instant case by the opinion of Mr. Justice McBRIDE clearly involves a re-examination of a question of fact in a manner expressly forbidden by the organic law, and in spite of the language of the present Chief Justice in the Buchanan case, approved by Mr. Justice BEAN in the Sigel case. Whatever else the electorate may have said, they did not consent to any impairment of the trial by jury. It is the tribunal of the people, the point of contact between them and the courts they have created, and we do but arrogate to ourselves unconstitutional authority if we presume to re-examine a disputed question of fact in an action at law, or cause it to be done except by 12 good and lawful men according to the formula of the fundamental law.

In view of the repeated guaranties of a jury trial laid down in the Constitution as construed by judicial wisdom from the earliest times, we cannot say to a suitor:

"It is true you did not have a jury trial, but we will substitute something which we deem at least equal to the same, and will read your testimony and re-exam-

ine the question of fact determining matters of dispute among witnesses, and you must be content with whatever modification we choose to impose."

It is saying to him:

"Your constitutional rights, indeed, have been violated, and accordingly we declare the verdict to be a nullity; but, because they have been set thus at naught, we ourselves will further disregard them, and will force upon you the result of our own re-examination of the facts."

It is equally in derogation of the constitutional right of both parties for us to reconsider in this manner a question of fact triable by a jury. Owing to errors committed by the tribunal of first instance, the appellant has been deprived of a genuine jury trial. He enters here, hoping to be vouchsafed the actual enjoyment of that inalienable privilege. He ought not to be compelled to leave that hope behind. Neither ought we to abuse the same right of the respondent by substituting our verdict, instead of the one he secured, for he has been brought here against his will. In brief, our powers for the final reconstruction of the judgment of the Circuit Court are limited and controlled by the injunction of the organic law that we must not re-examine a question of fact tried by a jury unless we can affirmatively say there is no evidence to support it. In all cases where there is a substantial dispute in the testimony, and the procedure has materially fallen short of a jury trial, we cannot do more than reverse the judgment and direct that the question of fact be examined alone according to that constitutional standard.

There are cases to which the right of trial by jury does not attach, but this is not one of them. It is peculiarly within the province of a jury, considering

legal evidence under proper instructions from the court, to determine questions of fact. It is our duty to uphold this method of trial in the spirit and meaning of our fundamental law. Thus will be preserved in its vigor one of the dearest institutions of a free people, for, in the language of Mr. Justice McBride in his dissenting opinion in *Stevens* v. *Myers,* 62 Or. 372, 420 (126 Pac. 29).

"The right of trial by jury is one so precious, so vital to the preservation of our liberties, that we can well afford to search a little to find it, even to the extent of raking over the dead ashes of the past 50 years. It is a coal from the altar of liberty, and we should rather blow it into a flame than seek to extinguish it."

It is conceivable that by arbitrary conduct, law methods, mistakes of law, and in many other ways a presiding judge may do much to turn into a farce a hearing before a jury. No rule ought to be established which would compel any litigant to find relief from such a situation only in a verdict formulated in the cloistered chambers of this court on bare paper recitals of the testimony. Upon the evidence disclosed by the record it would have been wrong to direct a verdict either way in this case. There is a material dispute about the facts which properly should be settled by a jury.

The judgment should be reversed.    Reversed.

Mr. Justice Harris delivered the following dissenting opinion:

The people amended Article VII of the state Constitution at the general election held November 8, 1910, and Section 3 of that article now reads as follows:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless

the court can affirmatively say there is no evidence to support the verdict.    Until otherwise provided by law, upon appeal of any case to the Supreme Court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal.    If the Supreme Court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court: Provided, that nothing in this section shall be construed to authorize the Supreme Court to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which the accused was convicted in the lower court."

It will be observed that the quoted section is made up of three sentences.

The first sentence announces that the right of trial by jury shall be preserved, and that no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict.    According to Webster, the word "otherwise" means: "In a different manner; in another way; or in other ways; other than denoted."    The Century dictionary defines the word to mean: "In a different manner or way; differently."    The word "otherwise" clearly refers to "tried by a jury" or "trial by jury."    The first sentence therefore means that no fact tried by a jury shall again be examined in another way; but there is a single exception,

and that one is where the court can affirmatively say there is no evidence to support the verdict. In other words, if the court cannot affirmatively say there is no evidence to support the verdict, then a fact once tried by a jury cannot again be tried by any one except a jury. If the judge cannot say that there is no evidence to support the verdict, then neither he nor any other officer can try a fact once tried by a jury; but the re-examination and retrial of that fact, once tried by a jury, is by the express language of that sentence of the Constitution exclusively reserved to a jury, and the authority is not lodged elsewhere. The Supreme Court is one of the courts in this state, and therefore, if the mandate of this sentence of the Constitution is to be obeyed, no fact once tried by a jury shall again be tried by the Supreme Court, unless, and only unless, this court can affirmatively say there is no evidence to support the verdict. If there is evidence to support the verdict, the re-examination of the facts must be by a jury, if for any reason a re-examination is necessary.

The second sentence provides only that the testimony, instructions and any other material matter may be attached to the bill of exceptions. If the cause is submitted in the manner provided for by the second sentence, then, by the terms of the third sentence, the Supreme Court is empowered to affirm the judgment or change it in any respect. If the Supreme Court, after considering all the matters presented by the record, is of the opinion that the judgment is correct, such judgment shall be affirmed, even though errors were committed during the trial; or, if the judgment should be changed in any respect, the power is granted to change the judgment in the same manner and with like effect as in suits in equity. The third sentence, considered

75 Or.—40

as standing alone, confers upon the Supreme Court ample power to try a fact and render a judgment on whatever conclusion is reached after a re-examination of the fact; and the language of the third sentence imposes only one limitation upon the power conferred. The declaration that the Supreme Court is not authorized to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which he was convicted in the lower court is a limitation which emphasizes and makes more certain the amplitude of the power designed to be conferred by that portion of the sentence which precedes the limitation mentioned.

There is no difficulty in knowing just what each sentence means when considered alone and without reference to any other sentence; but the attempt to construe the section, when considered as a whole, immediately carries us into a field of incongruity. The first sentence is inconsistent with the third, and the latter contradicts the former. Neither ingenuity nor unbridled imagination can give to each sentence its full literal meaning, and then from all fashion an harmonious whole. A slight change in the wording or the addition of a few words, or even one word, would produce an harmonious result, but a construction which will preserve in all its largeness the broad power granted by the third sentence, without at the same time disregarding the prohibition enjoined by the first sentence, necessitates the interpolation of words not appearing in the section. The third sentence empowers the Supreme Court to retry a fact once tried by a jury; but the first sentence restrains the Supreme Court from re-examining a fact once tried by a jury, unless there is no evidence to support the verdict. To do to the full extent what can be done under the terms of the third

sentence is to do that which the first sentence says cannot be done; and to refrain from doing what the first sentence says shall not be done is to refrain from doing that which the third sentence says can be done. The section contains an imperative command to do that which the same section, with equal imperativeness, has prohibited. There is, then, an irreconcilable and hopeless conflict between two parts of the same section of the Constitution. The result is that, if the third sentence is given its full literal meaning, then the first sentence is eliminated entirely; but, if the first sentence is construed to mean all that it expressly says, then the third sentence will not be entirely set aside, for the latter would permit the court to change a judgment in any respect, provided only that the making of such change did not involve and require the re-examination of a fact once tried by a jury. It seems to the writer that, under the circumstances, it would be far better to adopt a construction which will give full effect to one part and some effect to the conflicting portion than it would be to give full effect to one and no effect at all to the other; and such is the recognized rule of construction: Cooley, Const. Lim. (6 ed.), 72. No weight can be attached to the argument that, since the right of appeal is only a proffered privilege, and not an absolute right, therefore, when the privilege is exercised, it must be accepted *cum onere*. The force of the argument is completely destroyed when applied to the respondent who comes to this court not on his own motion, but because he is brought here by the act of another. It is quite beside the mark to say that the right of trial by jury has been preserved within the meaning of the first sentence mentioned, if a jury did actually render some verdict. The conclusion reached by the majority opinion proceeds on the basis that, al-

though the form of trial by a jury was gone through with, nevertheless it was not a good or a proper trial, and therefore a nullity. If there was error sufficient to cause a bad verdict, then there was a jury trial in name only; it was an empty proceeding wherein form was substituted for substance, pretense for realty, and an imitation for the genuine. If possible, the language of the entire section should be so construed as to give full meaning to every word, clause and sentence; but the court must take the language as it is written, and interpret it to mean what it says. The court cannot write any part of the Constitution, but can only determine the meaning of what is actually recorded. The power exists so to change the fundamental law of this commonwealth as to confer upon the Supreme Court the right to try a fact once tried by a jury (Cooley, Const. Lim. [6 ed.], 30); but the court should not attempt to exercise the functions of a jury unless the authority is first granted in unequivocal and uncontradicted terms.

The question of the amount of damages suffered by the plaintiff was a question of fact tried by a jury. If the finding made by the jury is to be set aside, then the cause should be reversed. If there is to be a new trial, it should be by a jury, and not by this court. The judgment ought to be affirmed in its entirety, or reversed and remanded for a new trial.

Mr. Justice Benson delivered the following dissenting opinion:

It seems to me to be perfectly apparent that the first and third sentences of Article VII, Section 3, of the Constitution, as amended in 1910, are in hopeless and irreconcilable conflict. Especially is this true, if we undertake, under the powers apparently granted in

the third sentence, to determine anew a question of fact, such as the amount to be awarded to a plaintiff in an action for personal injuries. I am opposed to the notion that any court is justified by a process of interpretation or by a skillful refinement of logic in reading into a written law anything which is not obviously there already. Whether the first sentence of the section is read as a complete act or is read with the rest of the section it still means but one thing. If the third sentence imports what is contended for in the prevailing opinion in this case, then the first sentence is thereby rendered meaningless. The fault is not with the courts, but with the legislative power, which, in this instance, is the sovereign citizenry of the state. That there may be instances wherein the third sentence can be usefully and fairly applied without inconsistency, is undoubtedly true, but not in any case in which this court presumes to question the finding of a jury upon the facts. The preservation of the right to a trial by jury is, in my opinion, of far more importance as a safeguard against injustice than any benefits to be derived from a speedy disposition of litigation. In the case at bar, we should either affirm the judgment of the lower court or remand it for a new trial.